68690. CHANCE v. THE STATE.
68691. MAYO v. THE STATE.
68697. BARMORE v. THE STATE.
(322 SE2d 741)

QUILLIAN, Presiding Judge.

Defendants appeal their conviction of attempted armed robbery. Olen Googe, at 6:00 a.m. on the morning of July 10, 1982, opened his convenience store in Hazelhurst, Georgia. Shortly thereafter the three defendants drove up to his store in one car. Defendant Chance was driving the car. Chance and defendant Barmore entered the store. Chance went down the left side and Barmore went down the right side. Barmore passed out of Googe's sight but he continued to look at Chance. Chance was "more or less, wandering around . . . he acted to me like he was, you know, just seeing what I was going to do all the time he was in there, you know, more or less, as a look-out . . . He didn't appear to be looking for any particular merchandise. Each time I saw him he was looking at me." At that time, the third defendant, Mayo came into the store and walked up to Googe. Mayo asked for a package of Kool cigarettes and then a package of Salem cigarettes. Googe placed both packages on the counter and rang up the sale and Mayo "pulled a pistol on me. He said, 'hold up.' " Googe grabbed the pistol from Mayo and turned it toward him while removing his pistol from his rear pocket. Googe yelled for both of the other men to come to the counter. When Chance arrived he made Chance and Mayo lie on the floor. Barmore did not come forward. Googe said Mayo was on his hands and knees and told him "ole man, you won't shoot me" and he started crawling toward him. Googe fired one warning shot from the pistol he had taken from Mayo. All he had to do was squeeze the trigger. The safety was not on and a round was in the chamber. Shortly after he fired the shot he heard the burglar alarm in the stockroom sound off. The alarm in the stockroom was activated by sound. It went off three times. Googe's son arrived and called the police. He got a shotgun out from under the counter and went to the rear to look for Barmore. He testified, "as I went down the aisle, I see Mr. Barmore coming out of the back room . . . the stockroom . . . He had the door open and was just starting out." This incident occurred on a Saturday. On the following Monday the meat cutter for Googe removed a frozen case of lima beans from the freezer in the storeroom. Underneath the carton of lima beans was a pistol laying on top of a towel. Inside the folded towel was a pair of handcuffs.

The police arrived within minutes after the call. One officer saw two one dollar bills in the hands of Chance. A search of Mayo and Barmore revealed that neither had any money.

Chance testified that he lived in Atlanta and he and Mayo and Barmore were driving to Brunswick. They stopped at Googe's for

some snacks. He was driving and Barmore was on the passenger's side. Mayo was in the back sleeping when they went in. He had about $220 on him. He heard Mayo at the counter and then Googe told them both to "get down on the floor." Shortly after that the police arrived.

Barmore also took the witness stand and said that he was working for a salary of $180 to $190 per week and had about $40 to $50 on him at the time he was arrested. He was looking for a snack in the store when he heard a noise up front and the words "get down." He started up front when he heard a shot. He crawled up behind the cashier and stayed there until Googe's son came around the corner and saw him. He did not go into the storeroom or place anything in the freezer.

Mayo testified that he was going to Brunswick with Chance to help him repair an air conditioner. He was in the back of the car asleep when he heard the doors slam and he got up and followed Chance and Barmore into the store. He wanted to buy two packages of cigarettes. He was wearing jeans. They were tight fitting. He always carried a pistol in his pocket. He had three dollars in his pocket. When he tried to remove his money from his pocket the pistol was pulled partially from his pocket. When Googe saw his pistol he grabbed it and forced him and Chance to lie down on the floor.

The defendants appeal their conviction of attempted robbery. *Held*:

## Appeal No. 68691

1. Mayo testified that he did not say "hold up," or intentionally pull his gun. The gun was inadvertently exposed when he attempted to remove his money from the same pocket in which the gun was located. The police search of his person showed that he had no money. Googe testified that Mayo pulled his gun and said: "hold up." The evidence was sufficient, when viewed in the light favorable to the verdict, to enable any rational trier of fact to find the existence of the offense of attempted armed robbery beyond a reasonable doubt. *Rutledge v. State*, 245 Ga. 768, 769 (267 SE2d 199); Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. We find no error in the refusal of the trial court to change the venue of the trial. An article had been written in the local paper which stated that the three defendants had been arrested and charged with attempted armed robbery. The Chief of Police was quoted as saying that Chance had previously served four years in prison and was now on parole from an armed robbery conviction and that Barmore was out on probation for armed robbery. The majority of jurors admitted that they had read the article but each juror failed

to respond to the question as to whether any of them had formed an impression or opinion as to what occurred on July 10, 1982. All jurors were qualified by the court that they could base their decision on the evidence admitted in court and the charge of the judge and render a fair and impartial verdict.

Our Supreme Court has followed the rule set forth in Murphy v. Florida, 421 U. S. 794 (95 SC 2031, 44 LE2d 589) that "a defendant is entitled to a panel of impartial jurors, but that this does not require that they be totally ignorant of the facts and issues involved." *Stevens v. State*, 247 Ga. 698 (4) (278 SE2d 398). The test as to whether or not newspaper publicity has so prejudiced a case that an accused cannot receive a fair trial is whether the jurors have formed fixed opinions as to guilt or innocence of the accused from reading such newspaper articles. *Welch v. State*, 237 Ga. 665 (1) (229 SE2d 390). The article here was factual, not inflammatory. The law in Georgia is well settled that a motion for a change of venue addresses itself to the sound discretion of the trial court which will not be disturbed on appeal unless it can be shown there was an abuse of discretion. *Allen v. State*, 235 Ga. 709, 713 (221 SE2d 405). The evidence does not show that any juror had a fixed opinion as to the defendant's guilt based on the newspaper articles (*Dobbs v. State*, 236 Ga. 427, 430 (224 SE2d 3)), and that they would base their findings on the evidence admitted in court and the law as given them in charge by the court. We find no abuse of discretion.

3. Defendant moved for mistrial based on the answer of a prospective juror to a question posed on voir dire. The prospective juror was asked: ". . . would any of you for whatever reason, place more creditability on the testimony of anyone else than you would the testimony or creditability of Vincent Wayne Mayo seated here before you? MR. CORBIN: Let me make sure I understand your question . . . Your client makes a statement and one of the witnesses that I know makes a statement and there was no evidence to support either one; we're just simply trying to base the decision on the truth of that statement from what is said. I don't know your client, but I do know the witness." The Court attempted to clarify the question and Mr. Corbin replied: "Judge, he is asking a question based on a basic reaction of every person in this courtroom. I don't know his clients. I do know that some of these witnesses, you know, they have good character; I know them for telling the truth, and if there was no other evidence, then I would believe one of these witnesses over the other."

The basis for a mistrial was that because of Mr. Corbin's answer "the inference was placed in the minds of all the jurors, if these are outstanding citizens as opposed to citizens who are not residents of this county they would be inclined to go along with the local residents." First, we must note that the answer of the prospective juror

was elicited by counsel for one of the defendants. It was responsive to the question asked. Induced error is impermissible. *Edwards v. State*, 235 Ga. 603, 604 (221 SE2d 28). And, counsel cannot complain, on appeal, of an error that his own conduct procured. *Dodd v. Dodd*, 224 Ga. 746, 747 (164 SE2d 726). Further, we find no inherent prejudice to a seemingly honest answer to a question propounded by counsel for a defendant. The grant of a motion for mistrial is largely a matter within the sound discretion of the trial court and the exercise of that discretion will not be disturbed on appeal unless the grant of a mistrial was essential to preserve the defendant's right to a fair trial. *Williams v. State*, 251 Ga. 749, 785 (312 SE2d 40). We find no abuse of discretion.

### Appeal No. 68690

4. The trial court did not err in refusing defendants' Motion to Sever. In *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) the Supreme Court adopted the standards of the American Bar Association for granting a severance, e.g., "whenever it appears 'necessary to achieve a fair determination of the guilt or innocence of a defendant.'" To obtain a severance, the defendants have the burden of showing more than "'the possibility that a separate trial would give him a better chance of acquittal. [Cit.] He must make a clear showing of prejudice and a consequent denial of due process.'" *Stevens v. State*, 165 Ga. App. 814, 816 (302 SE2d 724). There was no showing of prejudice. Their defenses were not antagonistic. All claimed innocence by non-participation. There was no showing that either defendant wanted to call another as a witness. We find no confusion of the evidence as to one defendant being applied to another defendant. The evidence was relatively simple. The jury was authorized to find from the testimony that all three defendants arrived in the same vehicle. Two defendants came in the store at one time. One went to the left side of the owner and one went to the right side of the owner. The third defendant then entered and ordered two packages of cigarettes. Subsequent search of his person showed he had no money. The owner stated he produced a pistol (which he later admitted he possessed) and said: "hold up." The burglar alarm in the rear stockroom sounded off before one defendant (Barmore) returned to the front of the store. A pistol and handcuffs were found in the freezer in the stockroom and the squeaking of the door to the freezer was sufficient to set off the acoustic burglar alarm. The gun was traced to Atlanta where it had been stolen in a burglarly from a person's home. Two of the defendants testified they were from Atlanta. Two issues were formed by the evidence. One — did defendant Mayo produce a gun and say "hold up"? Secondly — did the remaining two defendants aid or abet Mayo? The

jury found the evidence sufficient.

The grant or denial of a motion for severance lies within the sound discretion of the trial court and its ruling will not be reversed on appeal absent clear abuse of that discretion. *Stevens v. State*, 165 Ga. App. at 816, supra. We find no abuse of discretion.

5. The trial court did not err in admitting the pistol, handcuffs, and towel found in the freezer of the stockroom after the robbery. The unexplained appearance of those items following the robbery would shed light on the intent of defendant Barmore if he had placed them there. Defendant Barmore was last seen prior to the robbery in the vicinity of the stockroom. He did not come forward when demanded by Mr. Googe. After a shot was fired Googe heard the acoustic burglar alarm in the storeroom sound off three times. The squeaking of the lid on the freezer could have activated the alarm. The gun found in the freezer was stolen from a home in Atlanta. Two of the defendants were from Atlanta.

Evidence to be admissible must be relevant. OCGA § 24-2-1. It must relate to the issues tried and bear upon them, either directly or indirectly. Id. Questions of relevancy are for the court. *Alexander v. State*, 239 Ga. 108, 110 (236 SE2d 83). The Georgia rule favors admission of any relevant evidence, no matter how slight its probative value (*Sprouse v. State*, 242 Ga. 831, 833 (252 SE2d 173)) and evidence is relevant if it renders the desired inference more probable than it would be without the evidence. *Patterson v. State*, 233 Ga. 724, 725 (213 SE2d 612). There was no abuse of discretion.

6. As we have previously determined that the evidence was sufficient, under the standard set by Jackson v. Virginia, supra, to enable any rational trier of fact to find the existence of the offense of attempted armed robbery beyond a reasonable doubt, it was not error to overrule Chance's motion for directed verdict and his motion for new trial. *Lee v. State*, 247 Ga. 411, 412 (6) (276 SE2d 590).

*Appeal No. 68697*

7. The first trial of these defendants ended in a mistrial. Defendant Barmore asserted that he was indigent and demanded a free copy of the transcript of the first trial. It was denied. Further, during the trial, counsel renewed his motion and requested a continuance until the transcript could be made available. Counsel argued that he needed the record for impeachment purposes of the State's witnesses.

Our Code provides that if a mistrial results the presiding judge "may, in his discretion . . . order that a brief or transcript" of the testimony be filed. OCGA § 17-8-5 (b). However, the U. S. Supreme Court, in Britt v. North Carolina, 404 U. S. 226 (92 SC 431, 30 LE2d 400), held that a defendant must be provided with a transcript of

prior proceedings when the transcript is needed for an effective defense or appeal. The record does not contain justification for the transcript of the prior trial before this trial was convened, and the only possible ground urged at trial and on appeal was for possible impeachment purposes and that arose during the trial and a continuance was requested. See *Wise v. Skinner*, 244 Ga. 225 (259 SE2d 475). Our Supreme Court, in *Burnett v. State*, 240 Ga. 681 (242 SE2d 79), addressed a similar issue in which counsel filed a motion for continuance so he could obtain a copy of the trial transcript to assist him in his representation of the defendant. It was held that such motions for a continuance were addressed to the discretion of the trial court, and a denial would not be reversed on appeal except for an abuse of discretion. This Court, in *Walker v. State*, 156 Ga. App. 478 (274 SE2d 680), faced the same issue and found no abuse of discretion in the denial of the continuance for the purpose of having a transcript of the prior trial prepared. In view of the evidence in this case, the time when the request for continuance was made, the lack of prior justification, and the purpose for which the transcript was requested, we find no abuse of discretion.

8. The State called Detective Chris Stewart as a rebuttal witness to introduce the statement made to him by defendant Mayo. Defendant Barmore argues that the State failed to prove that "Mayo was advised of his rights under Miranda prior to the interrogation." Further, Barmore contends that the court failed to charge the jury that such statement of Mayo could not be considered for the purpose of "establishing guilt . . ."

First, the record does not reveal an objection to the testimony of Detective Stewart. Admission of testimony without objection at trial cannot be urged as error on appeal. *Pulliam v. State*, 236 Ga. 460, 465 (224 SE2d 8). Secondly, such constitutional rights cannot be asserted vicariously. See Rakas v. Illinois, 439 U. S. 128 (1) (99 SC 421, 58 LE2d 387). Barmore cannot assert a claim of constitutional right for exclusion of this evidence for Mayo. A third person who is aggrieved by the introduction of damaging evidence that may have been illegally procured has not had his constitutional rights infringed. Id. We find no merit to this enumeration.

9. The remaining enumerations asserted by Barmore have been determined adversely to him by our holdings above, or they are without merit.

*Judgments affirmed. Birdsong and Carley, JJ., concur.*

DECIDED SEPTEMBER 7, 1984 —
REHEARINGS DENIED SEPTEMBER 28, 1984.

*Lamar A. Elder, Jr.*, for appellants (case nos. 68690, 68697).
*Alvin C. McDougald*, for appellant (case no. 68691).
*Glenn Thomas, Jr., District Attorney, Jerry W. Caldwell, Assistant District Attorney*, for appellee.