74794. THOMAS v. THE STATE.
(360 SE2d 75)

BANKE, Presiding Judge.

Eartha Elizabeth Thomas was indicted for murder but found guilty of felony-grade involuntary manslaughter in connection with the death of her two-year-old foster child. She filed this appeal from the denial of her motion for new trial.

On December 10, 1982, the Department of Family and Children Services (DFACS) placed the child in the appellant's care as a foster

parent. She remained there for approximately three months, until her death on March 24, 1983. A pediatrician who had begun treating the child when the child was 10 months of age, testified that although the child had been developmentally delayed due to fetal alcoholism syndrome, she had appeared to be well-nourished and to be progressing well after she began living in the appellant's care. On March 23, 1983, the day prior to the child's death, the appellant had brought her to the pediatrician's clinic for a routine examination. The pediatrician testified that he had found the child to be in good health at this time, noting that she had taken her first unassisted steps.

The following day, the pediatrician was summoned to a hospital where the child had been pronounced dead. At this time, he observed that the child "had bruises covering almost her entire body, arms, legs, stomach, back, chest, [and] head [as well as] scratch marks [and] fingernail marks." He testified that the bruises were not of the type that would be sustained by toddlers learning to walk and that the fingernail marks were of adult origin. Also, the physician observed lacerations in the child's mouth and gums which had not been present the day before. A pathologist called by the state testified that there were numerous hematomas present on the child's body and that, in his opinion, the immediate cause of death was "blood loss leading to shock due to all the injuries." He further stated that in his opinion the injuries were the result of child battering.

On the evening of the child's death, the appellant was arrested and charged with murder. After being advised of her *Miranda* rights, she signed a waiver-of-counsel form and made both an oral and a written statement which may be summarized as follows. On the morning of March 24th, the child had a second bowel movement which soiled her clothes. After cleaning the child for the second time that morning, the appellant lost her temper and "viciously" whipped the child with a belt. She then placed the child in a kitchen chair and went about her household chores. When she later noticed the child leaning in the chair as if falling asleep, she attempted unsuccessfully to revive her by placing her in a bathtub full of water. The appellant then telephoned the child's DFACS caseworker, who in turn summoned an ambulance to the house. The child was pronounced dead on the scene by the ambulance attendant.

At trial, the appellant testified that the child, who was learning to walk, was constantly falling and tended to bruise easily. She stated that the child had in fact fallen on the way to the pediatric clinic the day before her death, lacerating her lip. She further testified that the child's urine had a strong odor, which was consistent with the opinion of a defense-retained pathologist that the child had died from euremia resulting from renal failure. The appellant admitted having spanked the child with a belt on the morning of her death but denied

having beaten her "viciously." *Held:*

1. The appellant enumerates as error the denial of her motion to suppress as evidence a plastic bat seized from her yard some 12 days following the child's death. The bat was seized pursuant to the execution of a search warrant authorizing the search of her residence for "a thin belt, or any other type object that could have been used in inflict physical damage on a human body." The appellant contends that the affidavits submitted in support of the search warrant were insufficient to establish probable cause. See generally OCGA § 17-5-21.

" '(B)efore a warrant may issue, the issuing magistrate must have sufficient reasons to believe that a crime was committed, that the items sought are connected with the crime, and that the items sought will be found in the place to be searched. [Cits.]' " *Kennard v. State,* 180 Ga. App. 522, 523 (349 SE2d 470) (1986). In the present case, the affidavits contained information that the child had died of a severe beating at the appellant's residence, that the appellant had admitted to investigating officers having spanked the child with a thin belt, that the investigators were of the opinion that other objects might also have been used to inflict the injuries, and that the appellant had been arrested and bound over for the offense of murder. This information was sufficient to establish probable cause for a belief that the weapon or weapons used to inflict the beating would be found at the appellant's residence.

We reject the appellant's contention that because the crime had occurred 12 days prior to the issuance of the warrant, the information on which it was based was stale. "The proper analysis to determine timeliness is to view the totality of the circumstances for indications of the existence of reasonable probability that the conditions referred to in the sworn testimony would continue to exist at the time of the issuance of the search warrant. [Cit.]" *Lewis v. State,* 255 Ga. 101, 104 (335 SE2d 560) (1985). We conclude that the information set forth in the affidavits was sufficient to establish a reasonable probability that the item or items in question were still located at the appellant's home. See generally *State v. Fultz,* 171 Ga. App. 886 (321 SE2d 381) (1984).

The appellant also attacks the search warrant for its failure to describe with sufficient particularity the items to be seized. A warrant must describe the items to be seized with sufficient particularity to enable a prudent officer to identify them with "reasonable certainty." *Tyler v. State,* 176 Ga. App. 96, 97 (335 SE2d 691) (1985). However, "[w]hen circumstances make an exact description of instrumentalities, a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking. [Cits.]" Id. at 97. We hold that the description contained in the warrant was sufficient to enable the items to be seized to be identified with "reasonable cer-

tainty."

2. The plastic bat was introduced into evidence over the appellant's objection that there was no evidence connecting it with the child's injuries. The bat had previously been examined by a forensic serologist at the State Crime Laboratory, who testified that blood was present in the watery fluid contained in the bat but that he could not determine whether the blood was of human origin. The pathologist called by the state described the child's bruises as "horizontally . . . linear black markings." It is well settled that the admission of any relevant evidence is favored, no matter how slight its probative value. *Sprouse v. State*, 242 Ga. 831, 833 (252 SE2d 173) (1979). "[E]vidence is relevant if it renders the desired inference more probable than it would be without the evidence. [Cit.]" *Chance v. State*, 172 Ga. App. 299 (5) (322 SE2d 741) (1984). It is inferable from the evidence in this case that at least some of the child's bruises were inflicted with the bat. Consequently, the trial court did not err in admitting the bat, nor in refusing to strike the testimony of the serologist.

3. The appellant contends that, in view of the conflicting expert testimony with respect to the cause of death, the evidence was insufficient to support the verdict. Conflicts in the evidence are to be resolved by the finders of fact, upon proper instructions from the trial court. Our review on appeal is limited to a determination of the sufficiency of the evidence. *Dowdell v. State*, 180 Ga. App. 250 (1) (349 SE2d 10) (1986). Considering the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could reasonably have found the appellant guilty beyond a reasonable doubt of murder. Under such circumstances, the jury was certainly authorized to find her guilty of felony-grade involuntary manslaughter as a lesser included offense. See generally OCGA § 16-5-3 (b); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Arnett v. State*, 245 Ga. 470 (3) (265 SE2d 771) (1980).

*Judgment affirmed. Carley and Benham, JJ., concur.*

DECIDED JULY 16, 1987 —
REHEARING DENIED JULY 27, 1987.

*Martin C. Puetz, John Fleming*, for appellant.
*Sam B. Sibley, Jr., District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.