A89A0491, A89A0739. THE STATE v. EVANS; and vice versa.
(384 SE2d 404)

BIRDSONG, Judge.

The State appeals the trial court's order granting appellee/cross-

appellant Keith Evans' motion in autrefois convict as to Counts 1, 2, 3, and 4 of a certain Union County indictment, No. 88-UR-90. Appellee/cross-appellant filed a cross-appeal to the trial court's order denying cross-appellant's motion to suppress.

In April 1987, Keith Evans entered a plea of guilty to criminal attempt to commit interstate interference with custody (OCGA § 16-5-45 (c)), contributing to the delinquency of a minor (OCGA § 16-12-1), and interstate interference with custody (OCGA § 16-5-45 (c)). These offenses all stem from conduct by Keith Evans in regard to a teenage male, M. H. The interstate interference with custody charge specifically was averred to have occurred on September 13, 1986. The other two charges specifically were averred to have occurred on October 7, 1986.

In October 1988, based on what the State in essence claims was newly discovered information, Keith Evans was indicted as follows: (a) Count 1, sexual exploitation of children, specifically M. H., on September 30, 1986 (OCGA § 16-12-100); (b) Count 2, sodomy, specifically with M. H., on September 30, 1986 (OCGA § 16-6-2 (a)); (c) Count 3, aggravated child molestation, specifically by performing sodomy on M. H., on August 31, 1984 (OCGA § 16-6-4 (c)); (d) Count 4, distributing obscene materials, on September 30, 1986 (OCGA § 16-12-80); and, (e) three other counts not here relevant.

## I. A89A0491. The State v. Evans

The State asserts that the trial court erred in granting appellee Evans' motion in autrefois convict and thereby dismissing Counts 1, 2, 3, and 4 of Indictment No. 88-UR-90.

The State first contends that appellee Evans did not adequately raise a Fifth Amendment double jeopardy claim, as in his motion in autrefois convict appellee relied solely upon his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States. Suffice it to observe that the Fifth Amendment guarantee against double jeopardy is enforceable against the states through the Fourteenth Amendment. *Brown v. Ohio*, 432 U. S. 161, 164 (97 SC 2221, 53 LE2d 187); *North Carolina v. Pearce*, 395 U. S. 711, 717 (89 SC 2072, 23 LE2d 656).

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after . . . conviction. And it protects against multiple punishments for the same offense.'" *Brown*, supra at 165. "The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v.*

*United States*, 284 U. S. 299, 304 [52 SC 180, 76 LE 306] . . . : 'The applicable rule is that where the *same act or transaction* constitutes a violation of two distinct *statutory provisions*, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . .' " (Emphasis supplied.) *Brown*, supra at 166. If two or more offenses are the same under this test, "they necessarily will be the same for purposes of barring successive prosecutions." Id. But, " ' "[a] single act may be an offense against two statutes; and if each *statute* requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." ' " (Emphasis supplied.) *Pryor v. State*, 238 Ga. 698, 700 (234 SE2d 918).

Before applying the *Blockburger* test to the charges involved in this case, we must first factually determine whether the charges arise from the same act or transaction. "The question as to whether the transaction[s were] the same as a matter of *fact* can hardly be said to admit of much elucidation. It is true that this question may arise in the class of cases involving an offense which in its very definition and essential nature is *continuous in character*. In dealing with the question as to whether the *offense* be of that character, it is sometimes necessary to distinguish between one continuous, uninterrupted single act and a series of distinct and separate acts. [Cits.] It is also true that the question of identity in fact may be involved in that class of cases where the State by the generality of the indictment may not be confined to proof of any *specific date* or transaction within the period of limitation, with the result that a prosecution for a particular crime will usually operate as a bar for any such offense committed within the period of limitation previously to the indictment." (Emphasis supplied.) *Harris v. State*, 193 Ga. 109, 117 (17 SE2d 573). In this instance, examination of all charges in toto, together with the available evidence pertaining thereto, reveals that each of these *statutory offenses* was committed as a distinct and separate criminal act, and not as part and parcel of one continuous, uninterrupted criminal transaction. Further, the original accusation and the subsequent indictment both averred that each transaction occurred on a *specific date*, and thus while some of the general averment language contained within the charges of the original accusation may have been broad enough, when viewed in isolation, to encompass certain of the averments contained within the charges of the later indictment, when the charges are read as a whole such clearly is not the case. Compare *Harris*, supra at 117, and cases therein cited with the charges averring specific dates in both the accusation and indictment in this case.

Assuming arguendo that the offenses charged in the original accusation and the pertinent charges contained in the subsequent in-

dictment had arisen as part of the same act or transaction, we further find that each of the *statutory* offenses originally charged requires proof of a fact which the other subsequently charged *statutory offenses* do not require. We further find that the facts of *Brown v. Ohio*, supra, clearly are distinguishable from the facts in this case. Moreover, assuming arguendo that the offenses in Charges 1, 2, and 3 of the subsequent indictment had stood in the relationship of "greater and lesser included" offenses to one or more of the offenses charged in the original accusation, this case nevertheless would pose an exception to *Brown*. An exception to *Brown* exists, so that prosecution for a lesser offense does not prevent subsequent prosecution for a greater offense, whenever "the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred *or have not been discovered* despite the exercise of due diligence." See *Brown*, supra at 169, n. 7, and cases cited therein; *Garrett v. United States*, 471 U. S. 773, 796-797 (105 SC 2407, 85 LE2d 764) (O'Connor, J., concurring). We find no evidence that the State failed to exercise such due diligence in this case notwithstanding its apparent inability to obtain initially all the facts relevant to appellee Evans' separate acts of criminal misconduct with M. H.

Appellee next asserts that these charges violate the State's statutory prohibitions against multiple prosecution and conviction. OCGA §§ 16-1-6; 16-1-7; 16-1-8. The State asserts appellee has waived these issues. A properly crafted plea of autrefois acquit or convict is sufficient to raise a double jeopardy issue "whenever the proof shows the second case to be the same transaction with the first." (Emphasis deleted.) *Day v. State*, 163 Ga. App. 839, 840 (296 SE2d 145). Appellee Evans' written motion in autrefois convict, however, did not raise any issue regarding the violation of these statutory provisions. "If not made in writing at the proper time [upon arraignment and before pleading on the merits], a plea of former jeopardy is waived." *McCutchen v. State*, 177 Ga. App. 719, 722 (4) (341 SE2d 260); *Holmes v. State*, 120 Ga. App. 281 (1) (170 SE2d 312); see *Hooks v. State*, 138 Ga. App. 539 (3) (226 SE2d 765). However, this court further held in *McClure v. State*, 179 Ga. App. 245 (1) (345 SE2d 922), that while "the procedural bar against double jeopardy can, at least in some circumstances, be waived by failure to assert it in writing prior to trial . . . the applicability of the substantive bar may not even become apparent to an accused or his counsel until after the state has presented its case. . . . [M]ore recent decisions make it clear that the failure to file a written plea of former jeopardy prior to trial will not defeat an accused's right to be free of *multiple convictions* for the criminal act." Applying the precedent of *McClure*, we find that appellee Evans has waived any appellate claim of procedural double jeopardy, but

has not waived any issue of substantive double jeopardy arising from the application of pertinent statutory law to the facts of this case.

In the seminal case of *State v. Estevez,* 232 Ga. 316 (206 SE2d 475), the Supreme Court held that to apply the expanded statutory proscriptions against double jeopardy, "we must recognize that the proscription has two aspects. First, there are limitations upon multiple prosecutions for crimes arising from the same criminal conduct. Second, there are limitations upon multiple convictions or punishments that may be imposed for such crimes. The former is generally referred to as the procedural aspect of double jeopardy and the latter as the substantive aspect." Id. at 317. The rules barring multiple prosecutions differ from those barring multiple convictions. "First, there are limitations upon multiple prosecutions arising from the same criminal conduct. Code Ann. § 26-506 [OCGA § 16-1-7] entitled, 'Multiple prosecutions for same conduct' requires all crimes arising from the same conduct to be prosecuted in a 'single prosecution' provided they are in the same jurisdiction and are known to the prosecutor unless the court in the interest of justice orders separate trials. Code Ann. § 26-507 [OCGA § 16-1-8] sets out in detail when a second prosecution is barred. These are matters of procedure." *Estevez,* supra at 318-319. As above indicated, these procedural double jeopardy issues have been waived. Moreover, we apply OCGA § 16-1-7 (b) " 'only to such crimes which are *actually* known to the prosecuting officer *actually* handling the proceedings.' " *Baker v. State,* 257 Ga. 567, 569 (361 SE2d 808). The evidence in its current posture establishes that the prosecuting officer lacked knowledge of the existence of the subsequent crimes, when he prosecuted appellee Evans on the counts contained in the original accusation.

"The second policy expressed in the . . . Criminal Code limits the convictions or punishments that may be imposed for crimes arising from the same criminal conduct. This is generally referred to as the substantive aspect of the double jeopardy principle. . . ." *Estevez,* supra at 319. This appellate issue has not been waived. In regard to this substantive prohibition, the Criminal Code "provides that the accused may be prosecuted for but may not be convicted of more than one crime if: 'One crime is included in the other.' Code Ann. § 26-506 (a) (1) [OCGA § 16-1-7 (a) (1)]. A crime is included in the other when '(a) It is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission *of the crime* charged.' Code Ann. § 26-505 (a) [OCGA § 16-1-6 (1)]. Or '(b) It differs *from the crime* charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.' Code Ann. § 26-505 (b) [OCGA § 16-1-6 (2)]. . . . These sections establish *alternative* rules for determining

when one crime is included in another as a matter of fact *or* as a matter of law so as to bar conviction and punishment for more than one crime. . . . In addition the Criminal Code provides that an accused may not be convicted of more than one crime if: 'The *crimes* differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.' Code Ann. § 26-506 (a) (2) [OCGA § 16-1-7 (a) (2)]." (Emphasis supplied.) *Estevez*, supra at 319-320.

As above discussed, each of the original and subsequent statutory *crimes* charged contains at least one different element of proof; that is, each pertinent *crime* charged requires proof of an additional fact which the other pertinent charged *crimes* do not. See, e.g., *Isbell v. State*, 190 Ga. App. 245 (378 SE2d 529). Nor can any pertinent crime charge be established by proving the culpable mental state required to prove another pertinent crime charged. Viewing each charge in toto and on its face, we find that each crime charged prohibits a distinct type of criminal conduct different in both gravamen and societal norm from the other charges. Thus, we are satisfied that each pertinent crime charged prohibits a different type of criminal conduct than does any other pertinent charged *crime*; that is, no pertinent crime charged against appellee Evans differs from another pertinent crime charged only in that one is defined to prohibit generally a designated kind of criminal conduct while the other pertinent charge merely prohibits a specific instance of such conduct. Finally, we conclude that no pertinent crime charged differs from another pertinent charged crime only in the respect that a less serious injury or risk of injury, as enunciated in OCGA § 16-1-6 (2), suffices to establish its commission. Compare standards in OCGA §§ 16-1-6; 16-1-7 (a).

Accordingly, we find that the trial court erred in granting appellee Evans' motion in autrefois convict and thereby dismissing Counts 1, 2, 3, and 4 of Indictment No. 88-UR-90.

## II. A89A0739. Evans v. The State

Cross-appellant Keith Evans broadly asserts that the trial court erred in denying his motion to suppress certain evidence obtained as a result of an illegal search and seizure.

Although the cross-appellant asserted numerous grounds in his suppression motion, the only ground which he adequately advances on appeal is that probable cause was lacking for issuance of the warrant due to "staleness." In particular, on appeal, cross-appellant does not argue or support with citations of authority, either that the magistrate was not neutral and detached or that the warrant was invalid on its face. All grounds not presented in cross-appellant's brief "by argument or citation of authority" have been abandoned and present

no issue for consideration on appeal. Court of Appeals Rule 15 (c); *Adams v. State*, 187 Ga. App. 340 (3) (370 SE2d 197).

It is well recognized that time is an element of probable cause, but "the precise date of an occurrence is not essential. Rather, the inquiry is as to whether [under the totality of the circumstances] the factual statements within the affidavit are sufficient to create a reasonable belief that the conditions described in the affidavit might yet prevail at the time of issuance of the search warrant." *State v. Luck*, 252 Ga. 347 (312 SE2d 791); *Mitchell v. State*, 239 Ga. 456, 458 (238 SE2d 100); *Thomas v. State*, 183 Ga. App. 819 (1) (360 SE2d 75). Pretermitting the issue of staleness, however, is the question whether the police relied in good faith on the warrant issued by the magistrate.

In *United States v. Leon*, 468 U. S. 897 (104 SC 3405, 82 LE2d 677), the United States Supreme Court held that the Fourth Amendment exclusionary rule should not be applied so as to bar the State's use of evidence obtained by police officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. Id.; see generally Daniel, Ga. Criminal Trial Practice § 2-25. The officer must have been acting "with objective good faith." Id. at 920. Good faith inquiry "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered." Id. at 922, n. 23. "[I]t is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued. . . . Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. [Cit.] The exception . . . will also not apply in cases where the issuing magistrate wholly abandoned his judicial role . . . in such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " Id. at 922-923; *United States v. Accardo*, 749 F2d 1477, 1480 and n. 4 (11th Cir. 1985). However, the existence of technical defects in the search warrant issued by the magistrate or judge does not automatically preclude the existence of objective good faith on the part of the police in relying on the validity of the warrant. *Massachusetts v. Sheppard*, 468 U. S. 981 (104 SC 3424, 82 LE2d 737).

We must now apply the above principles to the totality of the circumstances existing in this case. In this regard, we note that the

affidavit was not a so-called "bare bones" warrant. The affidavit provided the names of the persons who had supplied information to the police. These persons included the district attorney, Dr. Bob Frady and the alleged victim, M. H. The affidavit reflected that the appellant previously had pled guilty to certain offenses, involving M. H., including an offense involving appellant's encouragement of M. H. to "engage in homosexual activity." Thus, the original charges, pertaining to the same victim, obviously appeared to be meritorious. The affidavit revealed that M. H. asserted that a video tape had been made of appellant's acts of sodomy with him, and that certain nude photographs of M. H. had been taken. The affidavit was further factually detailed. The affidavit summarized affiant's interview with Dr. Frady, a "licensed psychologist," listing Dr. Frady's special qualifications in dealing with "sexual offenders," and concluding that "[a]fter describing the above relationship between [appellant, another adult male, and M. H.] it is [Dr. Frady's] expert opinion, based on his experience and knowledge, that it is reasonable to expect and very likely that Mr. Evans and Mr. Roberts would still have possession of the sexually oriented tapes" approximately 20 months later.

At the suppression hearing, the GBI agent who obtained the warrant and was present at its execution testified that he contacted Dr. Frady after being advised that the latter "had quite a bit of knowledge" pertaining to the conduct of sexual offenders; that Dr. Frady led the agent "to believe that he had a great [amount of] knowledge of this type of activity and how people conducted themselves"; that the district attorney accompanied the agent to see Dr. Frady; and, that in addition to expressing his opinion concerning the continued existence of the tapes, Dr. Frady also discussed his background and experience in detail. The search warrant was issued and executed the same day.

In *State v. Stringer*, 258 Ga. 605, 606 (372 SE2d 426), the Supreme Court in obiter dictum observed that "[t]he good-faith exception to the exclusionary rule occurs when an officer makes a judgmental error concerning the existence of facts sufficient to constitute probable cause if the officer has *forthrightly* set out the facts in an affidavit for a search warrant." (Emphasis supplied.) We agree with this general observation and note that there exists no evidence in this record that the affidavit was made other than "forthrightly."

Based on the totality of the circumstances, we find that the law enforcement officials acted in objective good faith, within the meaning of *Leon*, in executing the search warrant and that any deficiency in the warrant or its affidavit would not result in the invocation of the exclusionary rule. Accordingly, we find that the trial court did not err in denying cross-appellant's suppression motion.

*Judgment affirmed in Case No. A89A0739 and reversed in Case*

*No. A89A0491. Deen, P. J., and Benham, J., concur.*

DECIDED JUNE 26, 1989 —
REHEARING DENIED JULY 11, 1989.

*Michael H. Crawford, District Attorney*, for appellant.
*Claude S. Beck*, for appellee.