S92G0225. GARY et al. v. THE STATE.
(422 SE2d 426)

BENHAM, Justice.

We granted certiorari to determine a question of first impression in Georgia: whether the "good faith" exception to the exclusionary rule enunciated in *United States v. Leon*, 468 U. S. 897 (104 SC 3405, 82 LE2d 677) (1984) is applicable as a matter of state law in Georgia.[1]

After their home was searched pursuant to a search warrant, appellants Ronald and Alma Gary were indicted for possession of mari-

---

[1] While the Court of Appeals has applied the *Leon* "good faith exception" in several cases (see *Parris v. State*, 205 Ga. App. 48 (421 SE2d 137) (1992); *Taylor v. State*, 204 Ga. App. 236 (419 SE2d 56) (1992); *State v. Smith*, 201 Ga. App. 650 (411 SE2d 877) (1991); *Talley v. State*, 200 Ga. App. 442 (408 SE2d 463) (1991); *State v. Morris*, 198 Ga. App. 441 (402 SE2d 288) (1991); *Davis v. State*, 198 Ga. App. 310 (401 SE2d 326) (1991); *Singleton v. State*, 193 Ga. App. 778 (389 SE2d 269) (1989); *Williams v. State*, 193 Ga. App. 677 (388 SE2d 893) (1989); *Betha v. State*, 192 Ga. App. 789 (386 SE2d 515) (1989); *Debey v. State*, 192 Ga. App. 512 (385 SE2d 694) (1989); *State v. Evans*, 192 Ga. App. 216 (384 SE2d 404) (1989); *Adams v. State*, 191 Ga. App. 916 (383 SE2d 378) (1989); *Masson v. State*, 191 Ga. App. 463 (382 SE2d 139) (1989); *Rodriguez v. State*, 191 Ga. App. 241 (381 SE2d 529) (1989)), we have not had occasion to address the issue.

juana with intent to distribute.[2] The trial court granted appellees' motion to suppress the evidence seized during the search. The Court of Appeals relied on the "good-faith exception" to the exclusionary rule adopted by the U. S. Supreme Court in *United States v. Leon,* supra, and reversed the trial court. *State v. Gary,* 201 Ga. App. 556 (411 SE2d 536) (1991).

The exclusionary rule had its inception in 1914 when the U. S. Supreme Court held that the Fourth Amendment to the United States Constitution barred the use in federal prosecutions of evidence secured through an illegal search and seizure. *Weeks v. United States,* 232 U. S. 383 (34 SC 341, 58 LE 652) (1914). It was not until its decision in *Mapp v. Ohio,* 367 U. S. 643, 655 (81 SC 1684, 6 LE2d 1081) (1961), that the U. S. Supreme Court determined that the sanction of exclusion was enforceable against the states through the operation of the Fourth and Fourteenth Amendments to the United States Constitution. In *Leon,* supra, the Court observed that the exclusionary rule was a judicially-created remedy to safeguard Fourth Amendment rights, and modified the rule to permit the introduction of evidence obtained by officers reasonably relying on a warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.[3] For the reasons that follow, we conclude that Georgia law precludes adoption of the *Leon* "good-faith exception" to the exclusionary rule as part of the jurisprudence of Georgia.

"[A] State is free as a matter of its own law to impose greater restrictions on police activity than those [the Supreme] Court holds to be necessary upon federal constitutional standards." *Oregon v. Hass,* 420 U. S. 714, 719 (95 SC 1215, 43 LE2d 570) (1975). Thus, "the State [has] power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so." *Cooper v. California,* 386 U. S. 58, 62 (87 SC 788, 17 LE2d 730) (1967). By passage in 1966 of an act "to provide for searches and seizures and for suppression of evidence illegally seized" (Ga. L. 1966, p. 567), the State of Georgia has chosen to impose greater requirements upon its law enforcement officers than that required by the United States Constitution, as interpreted by the U. S. Supreme

---

[2] Ronald Gary was also charged with possession of a firearm during the commission of a crime (the possession of marijuana with intent to distribute).

[3] The Court held that suppression remained "an appropriate remedy" if the warrant was issued pursuant to an affidavit containing information the affiant knew was false or would have known was false except for his reckless disregard for the truth; if the issuing magistrate wholly abandoned his judicial role; if the affidavit so lacked indicia of probable cause as to render official belief in its existence entirely unreasonable; or if the warrant issued were so facially deficient that the executing officers could not reasonably presume it to be valid. *United States v. Leon,* supra at 923.

Court.[4]

OCGA § 17-5-30, the codified version of Ga. L. 1966, p. 567, § 13, provides that

> (a) A defendant aggrieved by an unlawful search and seizure may move the court . . . to suppress as evidence anything so obtained on the grounds that: . . . (2) [t]he search and seizure with a warrant was illegal because . . . there was not probable cause for the issuance of the warrant. . . . (b) . . . If the motion is granted the property . . . shall not be admissible in evidence against the movant in any trial.

The State recognizes that the *Leon* good-faith exception is the result of the federal judiciary modifying a judicially-created exclusionary rule, while the Georgia exclusionary rule had its inception in the legislature. Nonetheless, the State suggests we exercise our judicial power to construe statutes and interpret OCGA § 17-5-30 so as to except the good-faith execution of a warrant from the meaning of an illegal search and seizure. However, OCGA § 17-5-30 is the legislature's unequivocal expression of its desire that evidence seized by means of a warrant that is not supported by probable cause be suppressed. The legislature enacted this statute to protect against governmental disregard for constitutionally-protected rights[5] by requiring the integral actors in the warrant-issuing process — the law enforcement officers who seek warrants and the members of the judiciary who issue warrants — to respect the probable cause requirements of the Georgia Constitution, Art. I, Sec. I, Par. XIII, and to carefully prepare and scrutinize applications for warrants.[6] In light of the unequivocal language of OCGA § 17-5-30, infusion of the *Leon* good-faith exception into the statute would be tantamount to judicial legislation.[7] We de-

---

[4] Our decision in this case is based on our construction of OCGA § 17-5-30. See *Michigan v. Long*, 463 U. S. 1032 (103 SC 3469, 77 LE2d 1201) (1983).

[5] The rights against self-incrimination and to be free from unreasonable search and seizure were described in *Underwood v. State*, 13 Ga. App. 206, 213 (78 SE 1103) (1913) as the sacred civil jewels which have come down to us from an English ancestry, forced from the unwilling hand of tyranny by the apostles of personal liberty and personal security. They are hallowed by the blood of a thousand struggles, and were stored away for safe-keeping in the casket of the constitution. It is infidelity to forget them; it is sacrilege to disregard them; it is despotic to trample upon them. They are given as a sacred trust into the keeping of the courts, who should with sleepless vigilance guard these priceless gifts of a free government.

[6] In several instances, appellate courts have used the *Leon* good-faith exception to avoid a determination of whether probable cause existed for the issuance of the search warrant. See, e.g., *Talley v. State*, supra; *State v. Morris*, supra; *Davis v. State*, supra; *Williams v. State*, supra; *Debey v. State*, supra; *Adams v. State*, supra.

[7] The *Leon* good-faith exception has been rejected by the appellate courts of other states which have statutory exclusionary rules. See *State v. Garcia*, 547 S2d 628 (Fla. 1989); *Com-*

cline to enter the realm of the legislature and, instead, turn to the judicial task at hand: to determine whether the warrant used to search the Gary home was supported by probable cause. If, as the trial court concluded, there was no probable cause to support issuance of the warrant, the evidence seized pursuant to that warrant must be suppressed pursuant to OCGA § 17-5-30.[8]

The affidavit submitted in support of the application for search warrant reads as follows:

> Affidavit for a Jackson County, Georgia magistrate's search warrant for the entire premises of 555 Belmont Ave., Commerce, Ga. Premises being occupied by a white male known as Ronald Gary. Said premises are described as follows: white, single-story dwelling with paved drive. Said dwelling is located in Jackson Co., Ga. within the city limits of Commerce.

> O[n] Thursday, March 30, 1989, affiant was contacted by an informant, which to affiant's knowledge has never given information to law enforcement officers in the past. Said informant stated to affiant that within the past three [3] days it had personally been in above-described premised and observed Ronald Gary in possession of a quantity of marijuana. Said informant stated that said marijuana was stored at the above-described premises by Ronald Gary.

> Said informant has never given information to law enforcement officers in the past but is believed to be truthful. Informant demonstrated a truthful demeanor when relating information by giving detailed descriptions which indicated a personal knowledge. The informant has a personal connection with the suspect. Informant is a mature person. Informant is employed.

> Independent investigation by affiant revealed that a white male known as Ronald Gary does occupy the above-described premises.

> For the above reasons, affiant has probable cause to believe that at the above-described premises there is now con-

---

monwealth v. Upton, 394 Mass. 363 (476 NE2d 548) (1985); State v. Carter, 322 NC 709 (370 SE2d 553) (1988); Davis v. State, 831 SW2d 426 (Tex. App. 1992).

[8] By holding that the Leon good-faith exception was applicable to the case at bar, the Court of Appeals did not have to address the issue of whether the search warrant was supported by probable cause.

tained marijuana in violation of Georgia criminal law.

In determining whether an affidavit sufficiently establishes the probable cause necessary for issuance of a warrant, we employ the "totality of the circumstances" analysis enunciated in *Illinois v. Gates,* 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), and adopted by this court in *State v. Stephens,* 252 Ga. 181 (311 SE2d 823) (1984), with the admonition that "[p]rudence counsels that *Gates* be considered as the *outer limit* of probable cause." Id. at 184. Under that analysis,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. [Cit.]

*Illinois v. Gates,* supra at 238-239. In addition, this court has cautioned attesting officers and magistrates to "make every effort to see that supporting affidavits reflect the maximum indication of reliability. . . ." *State v. Stephens,* supra at 184.

We conclude, as did the trial court, that the magistrate did not have a substantial basis for concluding that probable cause existed. The affiant relied on information given him by a person who had never supplied information before, and concluded the informant was being truthful because he/she gave "detailed descriptions which indicated a personal knowledge." Yet none of the facts that formed the basis for the affiant's conclusion that the informant was being truthful were ever revealed to the magistrate. The independent investigation done in an effort to corroborate the unproven informant's information established only that appellants lived where the informant said they did. The trial court did not err when it concluded that the "bare-bones" affidavit submitted to the magistrate,[9] was not sufficient to establish that there was a "fair probability" that contraband would be found at the Gary residence.

In sum, we hold that the good-faith exception to the exclusionary rule enunciated by the U. S. Supreme Court in *United States v. Leon,* supra, is not applicable in Georgia in light of our legislatively-mandated exclusionary rule found in OCGA § 17-5-30, and that the

---

[9] At the hearing on the motion to suppress, the trial court described the affidavit in question as "the weakest one I have ever seen."

trial court did not err when it ordered suppression of the contraband seized in a search of appellants' home because the warrant authorizing the search was not supported by probable cause.

*Judgment reversed. Clarke, C. J., Bell, P. J., Hunt, Fletcher and Sears-Collins, JJ., concur.*

CLARKE, Chief Justice, concurring.

I concur with the majority opinion. I write only to emphasize that the extension of the exclusionary rule to the facts in this case rests not on a constitutional right. It simply rests on the statute passed by the legislature and we simply hold that the courts are bound by that statute.

DECIDED NOVEMBER 5, 1992 —
RECONSIDERATION DENIED DECEMBER 2, 1992.

*H. Bradford Morris, Jr., Davidson & Hopkins, Jack S. Davidson,* for appellants.

*Timothy G. Madison, District Attorney, Jeffery G. Morrow, Assistant District Attorney, Michael J. Bowers, Attorney General, Harrison W. Kohler, Senior Assistant Attorney General,* for appellee.