305 Ga. 442
FINAL COPY

S18A1090. THE STATE v. ROSENBAUM et al.

Boggs, Justice.

This case considers, for the first time in Georgia, the effect of the State's delay in obtaining search warrants for data contained in electronic devices when those devices were originally seized in a warrantless, but lawful, manner by police. The trial court suppressed the evidence derived from the devices, relying on persuasive authority from the United States Court of Appeals for the Eleventh Circuit to find that the delay between the seizure of the devices and the issuance of the search warrants for the data contained in them was unreasonable and thus violated appellees' rights under the Fourth Amendment and Georgia law. From this order, the State appeals. We conclude that the analysis developed by the Eleventh Circuit is appropriate, the trial court's findings of fact are supported by the record, and the trial court did not err in granting the motion to suppress. We therefore affirm the judgment of the trial court.

On November 17, 2015, Laila Daniel, a two-year-old foster child, died while in the care of appellees Jennifer and Joseph Rosenbaum. Appellees were arrested pursuant to a warrant on December 4, 2015 and subsequently charged in a 49-count indictment for Laila's death and for the alleged physical abuse of M. P., their second foster child and Laila's biological sister.[1] At the time of appellees' arrest, police seized their iPhones, iPad, and MacBook laptop computer without a warrant. Police eventually obtained seven search warrants for the electronic devices, but the first warrants were not issued until May 26, 2017, 539 days after the devices were seized, and the last such warrants were issued on November 6, 2017, 702 days after the seizure.[2]

The initial investigation into Laila's death was handled by the Henry County Police Department, with Detective Aris Thompson assigned as the lead

---

[1] Appellees have since been re-indicted twice.

[2] After the Henry County district attorney's office voluntarily recused itself from the case on January 30, 2017, the Georgia Attorney General assigned the case to both the Cobb County and DeKalb County district attorney's offices. 423 days passed between the seizure of appellees' property on December 4, 2015, and the reassignment of the case to Cobb County and DeKalb County. 116 days passed from the date of the reassignment until the issuance of the first search warrants on May 26, 2017.

detective.[3] The devices were seized in two separate incidents. First, during the vehicle stop leading to appellees' arrest, Officer Robert Butera conducted an impound inventory of appellees' vehicle pursuant to department policy. Officer Butera asked Jennifer Rosenbaum "if there was anything of extreme value" in the vehicle, and she informed him about the iPad and MacBook. Officer Butera retrieved the iPad and MacBook from the vehicle and placed them in the property and evidence room at the Henry County Police Department "for safekeeping." Officer Butera filled out a property sheet showing that the iPad and MacBook had been placed in the property room. He did not personally hand a copy of the property sheet to Detective Thompson or any other detective involved in the investigation but instead attached it to his report and gave the report to his supervisor, according to his normal procedure. Detective Thompson acknowledged on cross-examination that, when he reviewed reports, he did not "go through the entire document" but only checked to verify that attachments were present as listed on the document. He acknowledged that property sheets could have been in his file and he failed to read them.

---

[3] Detective Thompson testified that this case was his first homicide investigation and that it was "a bit overwhelming," but he could "handle it."

The second seizure occurred after the arrest, while appellees were being transported to jail. At that time, Detective Wayne Harrison and his supervisor, Sergeant Peaden, decided that appellees' cell phones would be secured and preserved incident to their arrest.[4] Detective Harrison went to the Henry County Jail and secured the phones, which he placed in the property and evidence room. He listed the purpose of the seizure on the property sheet as "evidence." He did not personally inform Detective Thompson that the phones had been seized or that they were deposited in the property room, but he included that information in his case notes and attached to his notes copies of the property sheet showing that the devices had been seized. He further testified that case notes and property sheets form part of the case file and that the lead detective receives the originals of everything. Detective Thompson denied knowing that the phones had been seized, although he acknowledged that they were "critical evidence." He was aware that another detective was "tasked with obtaining phone records," but he made no inquiry himself as to the whereabouts of the phones nor any effort to

---

[4] Detective Harrison testified about the necessity of securing cell phones via a search incident to arrest, including the need to prevent the destruction of evidence that might generally be located on a phone. Detective Harrison and Detective Thompson also testified about the type of evidence that they believed might be located on these phones.

obtain them.

The parties dispute the timing and substance of their communications regarding the electronic devices. According to the State, it was not until a hearing on May 23, 2017, 536 days after appellees were arrested, that the current prosecutor became aware of the possible existence of seized electronic devices. However, Detective Thompson acknowledged that, in a meeting in March 2017, the Cobb County assistant district attorney asked him if "any type of technology" had been found in the case and that he was unable to find anything in the file other than a request for appellees' phone records from the cellular provider.[5] Detective Thompson also acknowledged that he was asked to follow up with the property and evidence room and that he did so. However, the person he contacted said that "there wasn't anything," so he was "not sure if the person didn't know how to look it up in the system or they didn't know what they were doing." The trial court found that the devices "sat in the evidence room undisturbed until May 26, [2017]."

On June 23, 2017, appellees filed a motion seeking forensic examination

---

[5] As noted above, Officer Butera and Detective Harrison testified that the property sheets were attached to their reports and included in Detective Thompson's case file.

5

of the contents of the devices within a time certain and return of the devices themselves. The trial court held a hearing, at which counsel for appellees asserted that she had,

> since the beginning, been asking for these tapes, these phones, these computers that were seized from our clients. And about a month ago at the last hearing, I asked Mr. Boring [the Cobb County assistant district attorney] for those items. He said if we're through with them, we'll give them to you. And that's exactly what was said to me a year and a half ago by . . . Blair Mahaffey [the Henry County assistant district attorney]. So I'm asking the Court to consider that we have spent a year and a half without access to the most important pieces of evidence, because that contains pictures, e-mails back and forth between the families, and those are very crucial to our defense. We have not had it.

The trial court instructed the State to complete its examination and return the devices within 45 to 60 days. The devices, however, were still not returned, and appellees asserted that, as of the date of their appellate brief in June 2018, all the devices remained in the custody of the State.[6]

On January 28, 2018, appellees filed a motion in limine and to suppress the evidence recovered from the devices. At the hearing on the motion, counsel for appellees again stated that she had "repeatedly sought the return of their

---

[6] Appellees acknowledged that a copy of the devices' content has since been served on them.

electronic devices" at every court appearance since appellees' arrest in 2015.[7]

Specifically, defense counsel stated that she sought the return of the devices from Blair Mahaffey, the Henry County assistant district attorney initially assigned to the case, shortly after appellees' arrest; again at the March 16, 2016 hearing on the motion to recuse; and again at the September 28, 2016 bond hearing. At the hearing on the motion to suppress, the State questioned Mahaffey regarding whether he had been made aware that the police had custody of the electronic devices, and he responded, "If I was, I do not recall that. My first knowledge that that even existed was when I spoke with you about three weeks ago." On cross-examination of Mahaffey, the following exchange took place:

> Q. . . . [I]s it your position as you sit here today that you and I did not have a conversation in Judge McGarity's courtroom where I asked you about the devices and wanted them back for the Rosenbaums?
> A. If we had that conversation, I don't remember, no, ma'am.
> Q. Okay. So your position here is, you don't remember whether I spoke to you or not?
> A. I do not.

---

[7] There was a "Bond Hearing" for Appellee Jennifer Rosenbaum on December 15, 2015; a hearing on "Motion to Recuse the Henry County District Attorney and Staff" on March 16, 2016; a "Bond Hearing" for Appellee Joseph Rosenbaum on September 28, 2016; a "Motions Hearing" on February 21, 2017; and a "Status Hearing" on May 23, 2017.

Q. So I might have or I might not have according to you; correct?

A. I mean, that is a possibility, but I don't recall.

Q. Those are the two possibilities; correct?

A. Okay.

An investigator for the DeKalb County district attorney's office testified that appellees' attorney asked her at the May 23, 2017 hearing for the return of the electronic devices and that she contacted the Henry County Police Department and was able to locate the devices. The first warrants issued shortly thereafter.

The trial court granted the motion to suppress on February 27, 2018, employing the analysis used by the Eleventh Circuit in United States v. Mitchell, 565 F3d 1347, 1350-1351 (11th Cir. 2009), and United States v. Laist, 702 F3d 608, 613-614 (II) (11th Cir. 2012), which the trial court found persuasive, to analyze the effect of government delay in securing a warrant. The trial court concluded that the delay in this case was unreasonable and violated appellees' Fourth Amendment rights, and it rejected the State's argument that evidence obtained pursuant to the warrants nevertheless was admissible under the good-faith exception recognized in United States v. Leon, 468 U. S. 897 (104 SCt 3405, 82 LE2d 677) (1984). In rejecting that argument, the trial court noted that OCGA § 17-5-30, as interpreted by Gary v. State, 262 Ga. 573 (422 SE2d 426)

(1992), precludes any application of the Leon exception in Georgia. The trial court therefore granted appellees' motion to suppress all evidence derived from their electronic devices. The State filed a notice of appeal on March 1, 2018, and an amended notice of appeal on March 8, 2018.

1. As a preliminary matter, we address appellees' assertion that the State's appeal should be dismissed because the State failed to comply with the requirements of OCGA § 5-7-1 (a) (5) (B). See Ga. L. 2013, p. 222, effective July 1, 2013. That subparagraph provides that the State may appeal

> (5)  From an order, decision, or judgment excluding any other evidence to be used by the state at trial on any motion filed by the state or defendant at least 30 days prior to trial and ruled on prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first, if:
>      (A)  Notwithstanding the provisions of Code Section 5-6-38, the notice of appeal filed pursuant to this paragraph is filed within two days of such order, decision, or judgment; and
>      (B)  The prosecuting attorney certifies to the trial court that such appeal is not taken for purpose of delay and that the evidence is a substantial proof of a material fact in the proceeding[.]

The State filed its notice of appeal within two days of the trial court's order, and the notice recited that it was filed "under the authority of OCGA § 5-7-1 (a)

(4)." It did not include the certification required by OCGA § 5-7-1 (a) (5) (B).[8]

The State contends that it correctly filed its notice of appeal under OCGA § 5-7-1 (a) (4), permitting an appeal "[f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized . . . in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first[.]" We agree.

In State v. Andrade, 298 Ga. 464 (782 SE2d 665) (2016), we considered a similar assertion that a notice of appeal should have been filed under OCGA § 5-7-1 (a) (5). There, this Court considered the relative scope of OCGA § 5-7-1 (a) (4) and (a) (5) in the context of the grant of a motion to suppress a statement to law enforcement. We first noted that "for nearly forty years, both this Court and the Court of Appeals have acknowledged repeatedly that an appeal from an order suppressing a statement on the ground that it was involuntary or otherwise obtained by unlawful means is properly brought under OCGA § 5-7-1 (a) (4)." Andrade, supra, 298 Ga. at 466. Finding further that nothing in the subsequent

_____

[8] At the time of the hearing on February 6, 2018, trial had been set for March 12, and the order granting the motion to suppress was entered on February 27. The State's filing of the notice of appeal within two days is not necessarily indicative of an intent to file under OCGA § 5-7-1 (a) (5), as it very well could have been based on the trial schedule or an eagerness to proceed with an appeal.

enactment of paragraph (a) (5) indicated an intent to change or limit the previously settled scope of paragraph (a) (4), this Court held: "Just as it did before the enactment of OCGA § 5-7-1 (a) (5), OCGA § 5-7-1 (a) (4) authorizes the State to take appeals from pretrial orders that suppress or exclude 'evidence on the ground that it was obtained in violation of law.'" Id. at 467, quoting State v. Strickman, 253 Ga. 287, 288 (319 SE2d 864) (1984). In contrast, paragraph (a) (5) permits appeals "from orders excluding evidence other than the evidence with which OCGA § 5-7-1 (a) (4) is concerned." Andrade, supra, 298 Ga. at 466.[9]

Here, the trial court's order focused throughout on "evidence derived from [appellees'] electronic devices," and, after painstaking analysis, concluded that the delay between the State's obtaining the devices and the issuance of the search warrants was unreasonable and violated appellees' rights under the

---

[9] This would include, for example, "evidence excluded pursuant to general rules of evidence." Andrade, supra, 298 Ga. at 467, citing State v. Lynch, 286 Ga. 98, 102 (2) (686 SE2d 244) (2009) (holding that State could not appeal exclusion of similar transaction evidence and denial of motion to reopen evidence under pre-2013 version of OCGA § 5-7-1); see also Berky v. State, 266 Ga. 28, 29 (463 SE2d 891) (1995) (holding that State could not appeal exclusion of videotape under general rules of evidence under pre-2013 version of OCGA § 5-7-1); compare State v. Brown, 298 Ga. 878, 879 (785 SE2d 510) (2016) (appeal of exclusion of indictment naming unrelated parties under OCGA § 5-7-1 (a) (5)).

11

Fourth Amendment and Georgia law. Accordingly, the order expressly excluded "*evidence derived from* the Defendants' two iPhones, iPad, and MacBook" pursuant to the unconstitutional and illegal warrants. (Emphasis supplied.) Even though the devices themselves were lawfully seized nearly two years earlier, the lawfulness of the search of the data contained in the devices is a separate and distinct issue.[10] And "[e]ven under a strict construction of OCGA § 5-7-1 (a) (4), the State has a direct right of appeal where the trial court grants a pre-trial motion to exclude evidence on the ground that it was obtained illegally [under the wiretap statute]." Anderson v. State, 267 Ga. 116, 117 (1) (475 SE2d 629) (1996).[11] The State's appeal therefore was properly brought under OCGA § 5-7-

---

[10] See Riley v. California, 573 U. S. 373, 401 (IV) (134 SCt 2473, 189 LE2d 430) (2014) (information on cell phone not immune from search, but "a warrant is generally required before such a search, even when a cell phone is seized incident to arrest"); compare Glispie v. State, 300 Ga. 128, 133 (2) n.1 (793 SE2d 381) (2016) (distinguishing Riley because warrant obtained before search of appellant's phone).

[11] Anderson, like Andrade and other decisions of this Court, relied upon our opinion in Strickman for the holding that OCGA § 5-7-1 (a) (4) applies to the exclusion of illegally obtained evidence. In Strickman, the appellant contended that (a) (4) applies only to pleadings denominated "motion to suppress" that are filed pursuant to OCGA § 17-5-30. See Strickman, 253 Ga. at 288. This Court rejected the requirement of a specific nomenclature as "runes and sigils," Tuggle v. Tuggle, 251 Ga. 845 (310 SE2d 224) (1984), and looked at the plain language of OCGA § 5-7-1 (a) (4), holding that "evidence 'illegally seized' is seized illegally, whether its seizure violates the provisions of the Fourth Amendment, or, as in this case, laws and regulations respecting the Department of Public Safety." Strickman, 253 Ga. at 288. It then added the observation that the statute should be construed liberally as "remedial in nature." Id. More recent opinions of this Court, however, held that OCGA

1 (a) (4).

2. We now turn to the trial court's ruling on appellees' motion to suppress.

In reviewing such a ruling, we apply three fundamental principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. On numerous occasions the appellate courts of this state have invoked these three principles to affirm trial court rulings that upheld the validity of seizures. These same principles of law apply equally to trial court rulings that are in favor of the defendant.

(Citation and punctuation omitted.) Miller v. State, 288 Ga. 286, 286-287 (1) (702 SE2d 888) (2010). In Miller, we further noted that this standard of review

---

§ 5-7-1 is to be construed strictly against the State. See, e.g., Andrade, 298 Ga. at 464, citing State v. Cash, 298 Ga. 90, 91 (1) (a) (779 SE2d 603) (2015). To the extent that the statement that OCGA § 5-7-1 is to be construed liberally may be considered a holding and not dicta, this Court's more recent statements impliedly overruled this portion of Strickman. See White v. State, 305 Ga. 111, 122, n. 10 (823 SE2d 794) (2019) ("When a high court finds discordant opinions among its own horizontal precedents . . . (the court) generally follows its decision in the most recent case, which must have tacitly overruled any truly inconsistent holding.") (Citations, punctuation and emphasis omitted.) And, as we observed in Johnson v. State, 304 Ga. 369, 373 (2) (818 SE2d 601) (2018), the General Assembly in Ga. L. 2013, p. 222, §§ 3, 21 enacted OCGA § 5-7-6 ("This chapter shall be liberally construed to effectuate the purposes stated in this chapter.") and made it applicable to offenses which occur on or after July 1, 2013.

requires us to focus on the findings of fact made by the trial court in its order and the evidence supporting those findings, rather than other evidence gleaned from the record, construing it in favor of upholding the trial court's order. See id. at 289 (2).[12]

While, as noted above, no Georgia authority addresses the question raised in this appeal, the Eleventh Circuit has established a substantial body of law on this issue, issuing more opinions on the question of unreasonable delay than any other federal circuit cited by the parties or the trial court. Though these decisions are not binding, this Court may consider them as persuasive authority. See Perez v. State, 283 Ga. 196, 198 (657 SE2d 846) (2008). We agree with the trial court that the analytical framework established by the Eleventh Circuit is reasonable, comprehensive, and thorough, and we adopt it for the analysis of this issue.

In Mitchell, supra, the Eleventh Circuit considered unreasonable delay in obtaining a search warrant, using as its starting point the United States Supreme Court's holding in United States v. Jacobsen, 466 U. S. 109 (104 SCt 1652, 80 LE2d 85) (1984), that "a seizure lawful at its inception can nevertheless violate

---

[12] The State asserts that a de novo standard of review must be applied here. However, as Miller explicitly notes, that standard is inapplicable to a trial court's findings of fact on disputed evidence or credibility issues. 288 Ga. at 287-288 (1).

the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'" Id. at 124 (III), citing United States v. Place, 462 U. S. 696, 709 (III) (103 SCt 2637, 77 LE2d 110) (1983). From this, the Eleventh Circuit reasoned that

> even a seizure based on probable cause is unconstitutional if the police act with unreasonable delay in securing a warrant. The reasonableness of the delay is determined in light of all the facts and circumstances, and on a case-by-case basis. The reasonableness determination will reflect a careful balancing of governmental and private interests.

(Citations and punctuation omitted.) Mitchell, supra, 565 F3d at 1350-1351. Balancing the "substantial possessory interest" of the defendant in his computer hard drive against the fact that "there was no compelling justification for the [21-day] delay" in seeking a warrant for examination of its contents, the court concluded that the defendant's motion to suppress should have been granted and reversed the district court. Id. at 1352.

The Eleventh Circuit further elaborated on this analysis in Laist, supra, establishing a framework for balancing governmental and private interests under the "totality of the circumstances":

15

In the past, courts have identified several factors highly relevant to this inquiry: first, the significance of the interference with the person's possessory interest; second, the duration of the delay; third, whether or not the person consented to the seizure; and fourth, the government's legitimate interest in holding the property as evidence.

(Citations and punctuation omitted.) 702 F3d at 613-614 (II). As the trial court noted, Laist and other decisions elaborate on these four factors, but "[g]iven the complex interactions of these factors, this balancing calculus is fact-intensive." Id. at 614 (II). The factors may overlap or be inapplicable to a particular case, depending upon the trial court's analysis of the totality of the relevant circumstances. Here, the trial court relied upon the Laist factors to complete this task. In reviewing the trial court's decision, we review its factual findings for clear error and its legal conclusions de novo. Kennebrew v. State, 304 Ga. 406, 409 (819 SE2d 37) (2018).

(a) Significance of interference with possessory interest.

The trial court noted that federal courts, in evaluating this factor, have considered the degree of possessory interest in the subject property, the duration of the delay as it affects that interest, and the efforts of defendants to secure the return of the items.

16

The State concedes that appellees have a substantial possessory interest in the electronic devices, given the significance of personal computers and similar devices, such as cell phones or tablets, as "unique possession[s] . . . in which individuals may have a particularly powerful possessory interest." Laist, supra, 702 F3d at 614 (II) (computer and hard drives); United States v. Burgard, 675 F3d 1029, 1034 (II) (B) (7th Cir. 2012) (cell phone). See also Riley v. California, 573 U. S. 373, 393-397 (III) (B) (1) (134 SCt 2473, 189 LE2d 430) (2014). Nor does the State contend that the length of the delay — approximately a year and a half — militates in its favor with respect to this factor. The State argues, however, that the trial court erred in finding appellees' demands for the return of their property "sufficiently robust" to prevent any diminishment of their interest in the property.

In Burgard, the Seventh Circuit observed:

> [I]t can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it — perhaps by checking on the status of the seizure or looking for assurances that the item would be returned. If so, this would be some evidence (helpful, though not essential) that the seizure in fact affected her possessory interests. [Cit.]

675 F3d at 1033 (II) (A).

The State asserts that no evidence in the record supports the trial court's finding. But this assertion overlooks the longstanding rule that, with regard to a hearing,

> [a]ttorneys are officers of the court and a statement to the court in their place is prima facie true and needs no further verification unless the same is required by the court or the opposite party. . . . See also Rank v. Rank, 287 Ga. 147, 149 [(2)] (695 SE2d 13) (2010) ("In the absence of an objection, counsel's evidentiary proffers to the trial court during a hearing will be treated on appeal as the equivalent of evidence.").

(Citations, punctuation and emphasis omitted.) Sherman v. City of Atlanta, 293 Ga. 169, 173-174 (4) (744 SE2d 689) (2013); see also Anthony v. State, 298 Ga. 827, 830 (2) (785 SE2d 277) (2016) (attorney's proffer not proper substitute for evidence when State objected and insisted on proof). The State neither objected nor offered opposing evidence at the hearing on June 23, 2017, when defense counsel stated that she had been seeking the return of the devices for a year and a half. Counsel made a similar statement at the hearing on appellees' motion to suppress, and while the State did not object to her statement, it did offer testimony from one witness, the original assistant district attorney, whose testimony — as the trial court noted — was not a positive denial that the request

18

occurred but rather a lack of recollection.[13] The State did not call any other

witness to testify that no such request occurred. In addition, the unsuccessful

inquiry by Detective Thompson to the property and evidence room on March 23,

2017 was made only a few days after the March 16 hearing on the motion to

recuse, one of the occasions on which appellees' counsel stated that she

requested return of the devices. Some evidence of appellees' demands therefore

was presented, sufficient to avoid diminishing their possessory interest.

Moreover, as Laist notes, even if a possessory interest was diminished, "the

Fourth Amendment still obligated the [State] to diligently obtain a warrant.

[Cit.]" (Punctuation omitted.) 702 F3d at 616 (II).

(b) Duration of delay.

The trial court found that the duration of the delay in this case "weighed

strongly in favor of the Defendants." Here, the delay between seizure of the

devices and searches of their contents pursuant to the warrants was significantly

longer than the delay in cases decided by the Eleventh Circuit and cases from

---

[13] While the State argues that we can infer from other portions of this witness' testimony that defense counsel made no demand, in reviewing the trial court's order we look to the findings in that order, not other evidence, and we do not revisit the credibility judgments of the trial court. Miller, supra, 288 Ga. at 286-287 (1).

19

other circuits upon which the Eleventh Circuit and the trial court relied.[14] The

State in its appellate brief cites several additional cases, but none involved so

lengthy a delay, and the circumstances underlying the delays differ substantially

from those presented in the case before us.[15] Moreover, in each of those cases,

[14] Decisions cited by the trial court in addition to Mitchell, supra, 565 F3d at 1351 (finding Fourth Amendment violation where delay was 21 days), and Laist, supra, 702 F3d at 613 (II) (no violation where delay was 25 days), include Burgard, supra, 675 F3d at 1030 (same, six days); United States v. Stabile, 633 F3d 219, 235 (III) (A) (3) (3rd Cir. 2011) (same, three months); United States v. Martin, 157 F3d 46, 54 (II) (B) (2nd Cir. 1998) (same, 11 days); United States v. Mayomi, 873 F2d 1049, 1054 (II) (7th Cir. 1989) (same, 48 hours). See also United States v. Morgan, 713 Fed. Appx. 829 (11th Cir. 2017) (17 days); United States v. Brooks, 648 Fed. Appx. 791 (11th Cir. 2016) (ten months); United States v. Sparks, 806 F3d 1323 (11th Cir. 2015) (23 days); United States v. Calixte, 591 Fed. Appx. 929 (11th Cir. 2015) (11 months); United States v. Shaw, 531 Fed. Appx. 946 (11th Cir. 2013) (three months); United States v. Emanuel, 440 Fed. Appx. 881 (11th Cir. 2011) (34 days); United States v. Whaley, 415 Fed. Appx. 129 (11th Cir. 2011) (indeterminate but approximately three months); United States v. Vallimont, 378 Fed. Appx. 972 (11th Cir. 2010) (45 days).

[15] In United States v. Gregoire, 638 F3d 962 (8th Cir. 2011), a laptop was searched one year after its seizure, but was seized *pursuant to a warrant* that specifically authorized the seizure of "financial records . . . and all computers on the property." The Eighth Circuit agreed with the district court that this warrant "clearly contemplates at least a limited search of the computer's contents without the need of a second warrant." (Punctuation omitted.) Id. at 967-968 (I) (A). In United States v. Howe, 545 Fed. Appx. 64 (2nd Cir. 2013), affirming the district court's denial of the defendant's motion to suppress, the police officer swore out an application for a *state* search warrant the day after seizing the computer but did not obtain the *federal* warrant until 13 months later. In United States v. Christie, 717 F3d 1156 (10th Cir. 2013), the Tenth Circuit affirmed the district court, holding inter alia that a five-month delay was reasonable because the computer was seized with the consent of the defendant's husband and the defendant did not object. And in United States v. Phillips, 2017 U. S. Dist. LEXIS 199720 (E.D. Mo. Nov. 6, 2017), a magistrate judge determined that Phillips, a federal probationer, had consented to various conditions of probation, including permitting the search of his computers and informing his probation officer of the acquisition of any computers or electronic equipment, including cell phones. After Phillips reoffended, concurrent state and federal investigations were opened. The magistrate considered that the

the trial court made the fact-specific determination that the delay was reasonable. In contrast, in cases involving no earlier warrant, consent, or agreement under a probation order, and no other extenuating factors such as complexity of investigation, lack of manpower, or other showing of police diligence justifying delay, the delay complained of is measured in days or weeks — rather than months.

The State claims that the trial court erred in "tucking away" the analysis of the State's conduct into the Laist delay factor. That contention is without merit. The trial court considered the State's conduct both in its analysis of delay and at the conclusion of its analysis. In addition, the Eleventh Circuit in Laist was not as methodical in its approach as the trial court was in the order before us, and it followed no strict sequence in its consideration of the four factors, once it outlined them. But it is apparent that the Laist court considered the diligence of the police in the context of possible factors contributing to the delay in obtaining a warrant — including the scope of the investigation and

---

"seven-week period between the seizure and the subsequent search by state law enforcement officials, and a six-week period between the receipt of the phones by federal agents and their application for a federal search warrant," was not unreasonable delay under the circumstances. Id. at *31-32.

21

complexity of the warrant, the personnel available, and conflicting demands on the investigators' time, see 702 F3d at 614 (II) — and concluded that the delay was not caused by lack of diligence on part of the police. See id. at 617 (II).

Here, in contrast, the State made no showing of particular complexity, difficulty in drafting the warrant, or competing demands on a limited number of officers. Instead, the trial court found multiple errors, failures, and oversights on the part of the State with respect to investigating or even accounting for the devices. Despite the specific listing of each device in the property booking sheets attached to separate reports by Officer Butera and Detective Harrison, which Detective Thompson acknowledged he had in his file but did not read, and despite requests by appellees and at least one direct request to the property and evidence room, police "inexplicably" did not find the devices in their own property and evidence room until after the May 23, 2017 hearing, although the devices had been there since the time of appellees' arrest in 2015. The trial court's conclusion that "the State did not diligently pursue its investigation as it relates to the content of these devices" is amply supported by the record.

(c) Consent or lack of consent to the seizure.

The State asserts that "the trial court properly found that this factor was

22

irrelevant to this analysis, as Appellees did not consent to the seizure," and appellees do not argue this point.[16]

(d) The State's legitimate interest in holding the property as evidence.

The State agrees with the trial court that "this factor weighs strongly in favor of the State," and appellees do not address this point.

(e) Conclusion.

In its conclusion, the trial court balanced all these factors, finding:

> There was a significant interference with Defendants' possessory interests in their property over the course of the 539-day delay it took for the State to begin to examine it. This delay did not result from the complexities of the case nor any overriding circumstances, but from oversights that caused the State not to pursue their investigation into the contents of the devices with sufficient diligence. While the State's interest in holding Defendants' property as evidence is very high, this Court finds that there was an unreasonable delay between the seizure of their property and the issuance of search warrants and that this delay violated Defendants' Fourth Amendment rights.

---

[16] Consent to a search could, on the one hand, affect the calculation of the period of delay, see, e.g., Laist, supra, 702 F3d at 616 (II), or diminish a party's possessory interest in the property. Id. at 614 (II), citing Stabile, supra, 633 F3d at 235 (III) (A) (3) ("[W]here a person consents to search and seizure, no possessory interest has been infringed because valid consent, by definition, requires voluntary tender of property." (Footnote omitted)). But it also seems likely that a complete lack of consent, rather than a revocation of consent after a period of time, as in Laist, could be weighed in favor of a defendant, just as the giving of consent is weighed in favor of the government. Here, the trial court considered appellees' requests for return of their property in the context of their possessory interest.

"Here, the totality of the circumstances confirms the [trial] court's well-reasoned conclusion." Laist, supra, 702 F3d at 618-619.[17]

3. The State asserts that the trial court should have denied the motion to suppress, even if the search warrants were invalid, because the officers sought the warrants in good faith. This Court has held, however, that OCGA § 17-5-30

[17] The State also complains of the trial court's factfinding on three additional points, claiming cumulative error. None of those points are directly pertinent to the trial court's decision. The State first complains that the trial court erred in finding that "[o]n May 23, 2017, formally and on the record during a hearing, Defendants requested the return of their property," because the transcript of that hearing does not contain such a request. No decision, however, *requires* that a defendant's request for the return of property be made formally and on the record during a hearing. Such a request may be made by letter, Laist, supra, 702 F3d at 611 (I) (A), or even by merely "checking on the status of the seizure or looking for assurances," Burgard, supra, 675 F3d at 1033 (II) (A). Moreover, an investigator for the DeKalb County district attorney's office testified that she was present at the hearing on May 23, 2017, when "defense counsel asked us if she could have her clients' cell phones and computers back." In addition, appellees filed a motion seeking return of their property on June 23, 2017. Second, the State complains that the trial court incorrectly found that "[Investigator] Lucas asked [Detective] Thompson to take a second look for the devices," while it was actually Investigator Lucas who instituted the search. However, even assuming that the question of which State actor eventually contacted the property and evidence room is at all relevant, the testimony of Investigator Lucas that she "spoke with Detective Thompson and eventually got to the point where [she] spoke with someone at Henry County police property, and they were able to confirm that they did have those items" is not inconsistent with the trial court's findings. Finally, the State complains of the trial court's finding that the State, as of the time of the trial court's order, was "still unable to recover the records from the Defendants' computer," even though the prosecutor declared at a January 9, 2018 hearing that defense counsel had been provided with a disc containing an "in case view" and "mirror image" of the data. But at the hearing on the motion to suppress, Investigator Lucas' successor testified that the computer was given to another investigator to extract the data, and that "he may still be working on it, to be honest." This provides some evidence to support the trial court's finding.

precludes application of the <u>Leon</u> good-faith exception in Georgia. See <u>Gary v. State</u>, 262 Ga. 573 (422 SE2d 426) (1992). The State urges, as it did in the trial court, that <u>Gary</u> should be overruled and we should recognize the good-faith exception established by federal case law in <u>Leon</u>, supra, 468 U. S. at 913-919 (III), and its progeny. But the circumstances here are not like those in <u>Leon</u>, in which officers acted in objectively reasonable reliance on a neutral magistrate's determination of probable cause pursuant to an affidavit providing some evidence thereof. Id. at 926 (IV). Nor is this a situation such as that presented in <u>Herring v. United States</u>, 555 U. S. 135 (129 SCt 695, 172 LE2d 496) (2009), in which officers obtained evidence in "objectively reasonable reliance" on an arrest warrant from another county, unaware that the warrant had been recalled because the neighboring county sheriff's database still showed it as active. Id. at 146 (II) (B) (4).

The circumstances here more closely resemble those in <u>Burgard</u>, supra, in which the Seventh Circuit determined that the <u>Leon</u> good-faith exception would not apply to an unreasonable delay in obtaining a search warrant, observing that "[a] well-trained officer is presumed to be aware that a seizure must last no longer than reasonably necessary for the police, acting with diligence, to obtain

a warrant. When police fail to act with such diligence, exclusion will typically be the appropriate remedy." (Citation and punctuation omitted.) 675 F3d at 1036 (III). The Seventh Circuit also noted:

> Furthermore, removing this sort of police misconduct from the ambit of the exclusionary rule would have significant implications: it would eliminate the rule's deterrent effect on unreasonably long seizures. Police could seize any item—a phone, a computer, a briefcase, or even a house—for an unreasonably long time without concern for the consequences, evidentiary and otherwise.

Id. at 1035 (III).

The State has cited no decision allowing a good-faith exception to a seizure determined to be unreasonably long in circumstances similar to those in Burgard or in the case before us, where the facts of the case call reasonable reliance and diligence into question. Therefore, even if we decide to revisit Gary at some point, this is not the case in which to undertake that analysis.[18]

Judgment affirmed. All the Justices concur.

---

[18] We note that this Court has recently granted a petition for certiorari in which we have asked the parties to address whether the Court should continue to follow Gary. See Mobley v. State, S18G1546 (cert. granted Mar. 5, 2019).

26

Decided March 11, 2019.

Motion to suppress. Henry Superior Court. Before Judge Amero.

Sherry Boston, D. Victor Reynolds, District Attorneys, Charles P. Boring, Daysha D. Young, Emily K. Richardson, Assistant District Attorneys, for appellant.

Corinne M. Mull, for appellees.