**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 7, 2020**

# In the Court of Appeals of Georgia

A20A1460, A20A1461. THE STATE v. BRADBERRY, and vice versa.                    McF-051, 052

MCFADDEN, Chief Judge.

This appeal and cross-appeal arise from the same trial court order which granted Jeffery Bradberry's motion to suppress evidence of an Intoxilyzer breath test administered after his arrest for driving under the influence of alcohol, but denied his motion to suppress evidence of his refusal to submit to a preliminary alco-sensor breath test prior to his arrest. In Case No. A20A1460, the state appeals and challenges the suppression of the Intoxilyzer breath test evidence; in Case No. A20A1461, Bradberry cross-appeals, challenging the admission of his refusal to take the preliminary alco-sensor breath test.

In the state's main appeal, we find that the trial court made a clearly erroneous factual finding in suppressing the Intoxilyzer breath test evidence, so we vacate that ruling and remand the case with direction that the trial court perform the required totality of the circumstances analysis without consideration of that clearly erroneous factual finding. In Bradberry's cross-appeal, we find that the trial court abused its discretion in denying the motion to suppress evidence of Bradberry's refusal to take the alco-sensor breath test, and we therefore reverse that ruling.

1. *Facts and procedural posture.*

On October 14, 2018, Bradberry was involved in a traffic accident in Gwinnett County. A police officer investigating the incident asked Bradberry to take an alco-sensor preliminary breath test at the scene. Bradberry initially agreed to take the test, but when the officer produced the alco-sensor device and explained how Bradberry should blow into it, Bradberry would not take the alco-sensor test and instead performed other field sobriety tests. After conducting the field sobriety tests, the officer again asked Bradberry to take the alco-sensor breath test, and Bradberry refused.

The officer placed Bradberry under arrest and read to him the implied consent notice in effect at the time. That notice provided, among other things, that Georgia

law required Bradberry to submit to a state administered chemical test to determine if he was under the influence of alcohol and that his refusal to submit to the required testing may be offered into evidence against him at trial. When the officer finished reading the notice, Bradberry consented to a state administered breath test.

After consenting, Bradberry told the officer he needed to urinate and asked if he could do that. The officer replied that he had to do "all this stuff real quick, then we'll see what we can do." The officer subsequently drove Bradberry to a nearby precinct to conduct the breath test. Once inside the precinct building, Bradberry asked if he could use the restroom after the test, and the officer indicated that he could do so. A few minutes later, Bradberry took the Intoxilyzer breath test, which showed that his blood alcohol concentration was over the legal limit. Bradberry was then taken to use a restroom in the precinct.

On May 24, 2019, Bradberry was charged by accusation with driving under the influence of alcohol to the extent he was a less safe driver, driving under the influence of alcohol with an unlawful blood alcohol concentration, and following another vehicle too closely. He moved to suppress evidence of his refusal to take the alco-sensor preliminary breath test at the scene and evidence of the Intoxilyzer breath test taken after his arrest. After an evidentiary hearing at which Bradberry and the

3

arresting officer testified and video from the officer's body camera was introduced, the trial court entered an order granting the motion to suppress evidence of the Intoxilyzer breath test, but denying the motion to suppress evidence of Bradberry's refusal to take the alco-sensor breath test. These appeals followed.

*Case No. A20A1460*

2. *Intoxilyzer breath test.*

The state contends that the trial court made a clearly erroneous factual finding in support of its ruling on the motion to suppress evidence of the Intoxilyzer breath test. We agree.

> In reviewing such a ruling, we apply three fundamental principles: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

*State v. Rosenbaum*, 305 Ga. 442, 449 (2) (826 SE2d 18) (2019) (citation and punctuation omitted).

In this case, the trial court found that although the officer did not use direct physical force against Bradberry, "[t]he officer's refusal to allow him to use the

4

bathroom until the test was completed amounted to substantial *indirect* physical force against Bradberry." (Emphasis in original). The trial court found that this physical force, coupled with the reading of the implied consent notice in effect at the time, but a portion of which has now been held to violate the Georgia Constitution by *Elliott v. State*, 305 Ga. 179 (824 SE2d 265) (2019), rendered Bradberry's consent to the test involuntary.

Contrary to the trial court's finding, there is no evidence that the delay in Bradberry's use of the bathroom until after the breath test amounted to a physical force that influenced Bradberry's decision to consent to the test. As recounted above, it is undisputed, and plainly shown on the officer's body camera video of the encounter, that Bradberry had already consented to the test *before* he asked to use the restroom. See *Hughes v. State*, 296 Ga. 744, 746 (1) n. 5 (770 SE2d 638) (2015) (less deference owed to trial court's findings where facts can be definitively ascertained by evidence that is uncontradicted and presents no questions of credibility, such as facts discernible from a video recording). Moreover, a review of the hearing transcript reveals that Bradberry never mentioned the delay in using the bathroom during his testimony, and he certainly never testified that the delay had any impact on his decision to agree to take the test. Rather, Bradberry, who told the officer he had never

been arrested before, claimed that he agreed to take the breath test because once he was arrested he thought his rights were not the same as before the arrest, and based on the implied consent notice read to him by the officer, he believed he had no choice but to take the test because it was required by the state and his situation would be worse if he did not submit to it.

While the video shows that Bradberry asked to use the bathroom after he had consented to the breath test and that he later asked at the precinct if he could use the bathroom *after* the test, there simply is no evidence to support the trial court's finding that the delay in using the bathroom constituted physical force that impacted Bradberry's decision to take the test. The trial court's clearly erroneous finding therefore cannot be used to support its ruling that Bradberry did not voluntarily consent to the Intoxilyzer breath test.

The state suggests that without the trial court's clearly erroneous finding regarding the bathroom delay, there is no evidentiary basis for suppression of the Intoxilyzer breath test. But such a determination under the totality of the circumstances inquiry requires the assessment of witness credibility and the weighing of evidence, which are matters for the trial court sitting as the trier of fact. See

*Hughes*, supra at 747 (1) (noting that determination of credibility of witnesses and weight to be given testimony is a power that lies solely with the trier of fact).

So it will be up to the trial court to make that determination, in light of the currently applicable law.

> In recent years, the Supreme Court has weighed in on the constitutionality of Georgia's implied consent statute. In *Olevik v. State*, [302 Ga. 228 (806 SE2d 505) (2017),] the Supreme Court recognized that requiring a defendant to submit a breath sample violates Georgia's constitutional right against compelled self-incrimination. The Supreme Court rejected, however, the argument that the implied consent notice – the same notice used here – was so inherently coercive that the mere reading of the statute precluded use of any breath test obtained. Rather, the Supreme Court adopted a totality of the circumstances test for determining whether a defendant voluntarily consented to a breath test. Specifically, the Supreme Court held: the voluntariness of a consent to search is determined by such factors as the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling. *Olevik* left open the question of the constitutional implications of a defendant's refusal to submit to testing. That question was answered by the Supreme Court in *Elliott*[, supra,] which held that our constitutional guarantee against self-incrimination precludes the admission of evidence that a driver refused to submit to a breath test. The Supreme Court went on to note that its holding in *Elliott* may affect a totality-of-the-circumstances inquiry into whether a defendant voluntarily submitted to a breath test where the [s]tate first threatened that, if the defendant refused, that would be evidence against the defendant at trial. But the Supreme Court declined to address how its ruling affected the totality of the circumstances inquiry. In

7

subsequent cases, however, we have continued to employ the totality of the circumstances inquiry. Based on *Olevik* and *Elliott* and their progeny, it is clear that when a defendant seeks to suppress evidence of a breath test, the appropriate inquiry remains whether the defendant's consent to the test was voluntary under the totality of the circumstances.

*State v. Henderson*, ___ Ga. App. ___ (Case No. A20A1293, decided August 25, 2020).

We therefore vacate the portion of the trial court's order suppressing evidence of the Intoxilyzer breath test and "remand the case for the trial court to consider whether the totality of the circumstances[, without consideration of the bathroom delay,] show that [Bradberry's] consent to the [breath] test was given freely and voluntarily." *Davis v. State*, 332 Ga. App. 488, 490 (773 SE2d 442) (2015).

*Case No. A20A1461*

3. *Refusal to take alco-sensor breath test.*

Bradberry asserts that the trial court erred in ruling that evidence of his refusal to take an alco-sensor breath test at the scene of the accident is admissible against him. We agree.

"The Georgia Constitution provides that 'no person shall be compelled to give testimony tending in any manner to be self-incriminating.' Ga. Const. 1983, Art. I, Sec I, Par. XVI ('Paragraph XVI')." *Olevik*, supra at 235 (2) (c). "[T]his state

8

constitutional protection applies to more than mere testimony; it also protects [a person] from being forced to perform acts that generate incriminating evidence." Id. at 228. Moreover, "Paragraph XVI generally prohibits admission of a defendant's pretrial refusal to speak or act." *Elliott*, supra at 210 (IV). Not only is there ample case law supporting the conclusion "that Paragraph XVI precludes admission of a defendant's refusal to speak or act and the drawing of adverse inferences therefrom," Id. at 218 (IV) (D), but our Supreme Court has "specifically applied Paragraph XVI to bar a criminal prosecution that was based on a refusal to provide incriminating evidence by the side of the road." Id. at 217 (IV) (C) (ii). That "holding was consistent with an understanding that the [state] constitutional provision prohibit[s] using refusal to support a criminal prosecution." Id. at 218-219 (IV) (D) (footnote omitted).

In this case, the arresting officer confirmed at the suppression hearing that the alco-sensor is a preliminary breath test that would have required Bradberry to provide a breath sample by blowing into the device for a sustained period of time, similar to how the Intoxilyzer requires a person to blow for a long period of time in order to catch a valid sample. The officer's body camera video also showed the officer explaining to Bradberry how to properly blow into the device before Bradberry

9

refused. Bradberry himself testified that he refused to blow into the alco-sensor device because he was afraid it might show that he "was over the legal limit."

> *Elliott* held that, because Paragraph XVI protects against self-incrimination through certain types of compelled acts, admission of the refusal to consent to a breath test (which requires the compelled act of deep-lung breathing) would violate the defendant's constitutional right against self-incrimination. See *Elliott*, [supra] at 189 (III), 209 (IV). *Elliott* and [the Court's] underlying decision in *Olevik v. State*, [supra], were careful to distinguish that their scope does not extend to all types of searches, but is limited to breath tests.

*Dunbar v. State*, ___ Ga. ___ (3) (845 SE2d 607) (2020) (distinguishing refusal to consent to search of a home from the refusal to take a breath test).

We recognize that the issue before us involves an alco-sensor preliminary breath test, rather than the type of breathalyzer breath tests involved in *Elliott* and *Olevik*. Nevertheless, we do not find that distinction to be controlling since the evidence plainly shows that Bradberry would have been required to perform the affirmative act of blowing into the alco-sensor device for a sustained period of time. Because Bradberry had the right to refuse to provide incriminating evidence by performing such an affirmative act under Paragraph XVI, the admission of evidence of his refusal violates the state constitutional right against self-incrimination.

10

We note that the state has cited the case of *MacMaster v. State*, 344 Ga. App. 222 (809 SE2d 478) (2018), in which we stated: "[W]e have held that the refusal to take a [s]tate-administered chemical test under Georgia's implied consent law is admissible at trial. We discern no reason why the same rule in favor of admission should not apply in the context of a defendant's refusal to take an alco-sensor preliminary breath test[.]" Id. at 230 (1) (d) (citations omitted). But *MacMaster* was decided before the express holding in *Elliott* that "Paragraph XVI precludes admission of evidence that a suspect refused to consent to a breath test." *Elliott*, supra at 223 (IV) (D). Accordingly, the rationale of *MacMaster* is no longer sound and no longer provides controlling precedent on this issue. Rather, as explained above, Bradberry's refusal to submit to the alco-sensor breath test is inadmissible and therefore the trial court erred in denying his motion to suppress evidence of that refusal.

*Judgment vacated and case remanded with direction in Case No. A20A1460, judgment reversed in Case No. A20A1461. Doyle, P. J., and Hodges, J., concur.*