**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 30, 2023**

# In the Court of Appeals of Georgia

A23A0177. THE STATE v. THURSTON.

PHIPPS, Senior Appellate Judge.

The State appeals from the grant of defendant Nigel Thurston's motion to suppress evidence seized as a result of the search of his cell phone.[1] The State asserts that although it illegally downloaded the phone contents before it sought a search warrant, a warrant ultimately was obtained, and the phone contents should not have been suppressed. For the reasons that follow, we affirm the judgment of the trial court.

"In reviewing the trial court's grant of the motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be

---

[1] See OCGA § 5-7-1 (a) (4) (permitting State's direct appeal from an order suppressing illegally seized evidence).

upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review." *State v. Wilson*, 315 Ga. 613, 613 (884 SE2d 298) (2023) (citation and punctuation omitted). This standard of review requires us to construe the evidence most favorably to uphold the trial court's findings and judgment. *State v. Rosenbaum*, 305 Ga. 442, 449 (2) (826 SE2d 18) (2019).

So viewed, the record shows that on November 10, 2020, police executed a search warrant for Thurston's residence. The warrant authorized the seizure of a number of items, including "digital devices such as smartphones," but did not authorize a search of the contents of such devices. During the execution of the warrant, a cell phone was taken from Thurston's person and was later given to a detective, who was asked to extract digital data from the phone after being told that police had seized it pursuant to a search warrant.

The detective explained during a motion to suppress hearing that he was not limited in any way in searching the cell phone contents because he believed a valid search warrant existed. He further stated that he would not have searched the phone if he had known that the initial warrant did not authorize the search of its contents.

According to the detective, there were some discussions with the assistant district attorney and/or the case investigators regarding the evidence downloaded in 2020.

Thurston was charged with armed robbery, aggravated battery, two counts of aggravated assault, five counts of violating the Street Gang Terrorism and Prevention Act, and three counts of possession of a firearm during the commission of a felony. According to the second search warrant affidavit (discussed below), the cell phone was believed to contain unidentified evidence of the armed robbery.

On November 16, 2021, Thurston moved to suppress evidence obtained as a result of the warrantless search of his cell phone. The trial court granted the motion on May 10, 2022, finding that "[a]fter taking [Thurston's] cell phone, [its] digital content was seized and searched without a search warrant, consent, []or exigent circumstances to authorize the search of [the] cell phone data. Cell phone location and other personal communications and information [were] seized from this data." The State conceded at the suppression hearing that "the search was inappropriate" and that it would "not proceed with the evidence in that first search of the phone."

However, on April 26, 2022, while Thurston's motion to suppress was pending, the State applied for and obtained a warrant authorizing the search of his cell phone, and the same detective again downloaded its contents. The State acknowledges in its

3

appellate brief that the detective used the same protocol, procedures, and forensic extraction software when he extracted data from Thurston's cell phone in 2020 and 2022. In fact, the detective testified during the suppression hearing that extractions done in 2020 and 2022 were basically the same. Even the prosecutor admitted to the trial court that the information extracted in 2022 "mirror[ed]" that extracted in 2020.

The State provided supplemental discovery to Thurston, including a copy of the search warrant and the data retrieved from the cell phone. Thurston thereafter filed a second motion to suppress the cell phone data, claiming (i) "[t]he State's attempt to correct its admitted constitutional violation by obtaining a search warrant one and one-half years after it searched the cell phone[] cannot be justified, as such would subvert the warrant requirement," and (ii) the search warrant was overbroad because it "authorized searching for basically all the data created and stored on the device, without limitation as to type, location, or date of such data."

Following a hearing on this motion to suppress, the trial court entered an order thoroughly analyzing the issues and making exhaustive findings of fact. Based on these findings, the court granted Thurston's second motion to suppress, concluding that "the 2022 warrant was obtained solely as an attempt to overcome the Constitutional violation which occurred in 2020, of which the State became

4

concerned after review[ing] Defendant's first Motion to Suppress."[2] The State appeals this ruling.

The Fourth Amendment guarantees individuals the right to be free of unreasonable searches and seizures. U. S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"); see also Ga. Const. of 1983, Art. I, Sec. I, Par. XIII. In *Riley v. California*, 573 U. S. 373, 393 (III) (B) (134 SCt 2473, 189 LE2d 430) (2014), the United States Supreme Court specifically recognized that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." "With all they contain and all they may reveal, they hold for many Americans the privacies of life. The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought." Id. at 403 (IV) (citation and punctuation omitted). Accordingly, the

---

[2] The trial court also found that the State failed to establish that the search conducted pursuant to the warrant "was limited by or within the scope of" the warrant.

Court held that a warrant generally is required before information on a cell phone may be searched, even if the phone is lawfully seized.[3] Id. at 401 (IV).

The State recognized this principle and conceded that its original warrantless search of Thurston's cell phone in 2020 was improper. According to the State, however, it remedied this earlier violation by obtaining a search warrant two years later and downloading the same digital data from the cell phone a second time. Based on the circumstances in this case, we disagree. "[B]ecause a valid search warrant nearly always can be obtained after a search has occurred, allowing law enforcement to use a warrant from after-the-fact to justify an earlier search," in the absence of any justifiable conditions, "threaten[s] to vitiate the warrant requirement." *Mobley v. State*, 307 Ga. 59, 77 (4) (b) (834 SE2d 785) (2019) (citation and punctuation omitted). The State has failed to establish any justifiable conditions in this case.

_____

[3] While case-specific exceptions to this warrant requirement may exist, including exigent circumstances, see *Riley*, 573 U. S. at 388 (III) (A) (1), there is no evidence that such circumstances existed in this case since the phone had been lawfully seized in 2020 and stored in the sheriff's office. In fact, the State conceded that the initial warrantless search of the phone was illegal and did not argue the existence of exigent circumstances to search the phone in 2020.

The State cites *Stephens v. State*, 346 Ga. 686 (816 SE2d 748) (2018), to support its argument that evidence obtained from the cell phone pursuant to the 2022 search warrant is admissible under the independent source doctrine. However, as this Court pointed out in *Stephens*, "[t]he independent source doctrine allows the admission of evidence that was discovered by means wholly independent of any constitutional violation. When properly applied, the independent source exception allows the prosecution to use evidence only if it was, in fact, obtained by fully lawful means." Id. at 692 (2) (citation and punctuation omitted). "This doctrine typically operates when evidence discovered as the result of an initial unlawful search is later discovered in a second search conducted by lawful means using information gained independently of the initial search." *Wilder v. State*, 290 Ga. 13, 16 (2) (717 SE2d 457) (2011).

Here, the State's only evidence of an independent source is the 2022 search warrant, and that warrant was not based on any new information or evidence gained independently of that which existed in 2020. Indeed, as found by the trial court, the underlying facts used in the 2022 search warrant affidavit for Thurston's cell phone practically mirrored the underlying facts used in the 2020 search warrant affidavit for his residence:

The application provided to the [court] included the exact same five paragraphs recounting the investigation in this case as was used in the 2020 warrant. The only additional language in the application relating to the cell phone was a paragraph advising that the cell phone was recovered from [Thurston] during the search of his residence and had been "stored in the Paulding Sheriff's Office since the initial seizure in 2020." This paragraph followed with a request to "enter the physical device and initiate acquisition and search of the data contained within." No oral testimony was provided. The Court was not informed that this cell phone and its content[s] had been searched in 2020 without a warrant, []or that it was the subject of a Motion to Suppress hearing, set to be heard one week later.

In addition, the trial court further found that the detective

admitted that he had no reason to extract the data from the cell phone a second time prior to the request of the prosecutor to obtain a search warrant for the cell phone. There was no testimony provided to the Court, either upon application for the 2022 warrant []or during the motion hearing, of any new evidence gathered in the investigation which would explain or justify the need to extract the digital data from the cell phone a second time.

The State has failed to offer any separate source or other evidence that did not exist in 2020 to serve as an independent, lawful basis to use a warrant after-the-fact to justify the earlier search. See *Mobley*, 307 Ga. at 77 (4) (b). Moreover, unlike the

*Stephens* case, which involved the mere downloading of the phone information to preserve it for a later search, 346 Ga. at 690 (2), the trial court found in this case that the 2020 downloaded phone data was "turned . . . over" and discussed with the assistant district attorney and/or case investigators. We therefore reject the State's reliance on the independent source doctrine.

We likewise reject the State's suggestion that the good faith exception should apply because the detective believed he had authority to search the cell phone in 2020. "Georgia law precludes adoption of the . . . 'good-faith exception' to the exclusionary rule as part of the jurisprudence of Georgia." *Gary v. State*, 262 Ga. 573, 574 (422 SE2d 426) (1992). Despite the State's suggestion, this Court is not at liberty to overrule Supreme Court of Georgia precedent. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); accord *Cooper v. State*, 348 Ga. App. 649, 652-653 (4) (824 SE2d 571) (2019), overruled in part on other grounds, *Collier v. State*, 307 Ga. 363, 377 (834 SE2d 769) (2019).

Finally, the State's reliance on *Nelson v. State*, 312 Ga. 375 (863 SE2d 61) (2021), also is misplaced. *Nelson* involved the admissibility of cell phone records after an unreasonable delay between seizing the phone and obtaining a warrant to

9

search it. Id. Here, Thurston specifically acknowledged that he was not making a claim of unreasonable delay; he was claiming that the State improperly attempted to belatedly correct a Fourth Amendment violation that it conceded occurred in 2020. Indeed, the relevant issue in this case is whether the State — after downloading and searching Thurston's cell phone without a warrant in 2020 — could remedy the illegal search by asserting the same set of facts in a 2022 search warrant affidavit, subsequently obtaining a search warrant for the same phone contents, and re-downloading and searching the same digital data previously downloaded and searched illegally. Viewing the evidence in the light most favorable to uphold the trial court's findings and judgment, see *Rosenbaum*, 305 Ga. at 449 (2), we hold that the State could not.

We agree with the trial court that, based on the circumstances of this case, the 2022 warrant was obtained by the State "solely as an attempt to overcome the Constitutional violation which occurred in 2020," and "the State's course of action [is] unreasonable . . . [and] worthy of deterrence." See *State v. Stringer*, 258 Ga. 605, 606 (372 SE2d 426) (1988) ("The primary reason for the exclusionary rule is to deter police misconduct, whether it be negligent or intentional."). The State's action in this

10

case subverts the Fourth Amendment warrant requirement. The trial court therefore properly suppressed the evidence seized from Thurston's cell phone.[4]

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur.*

---

[4] Given our affirmance of the trial court's order granting suppression on this ground, we decline to address Thurston's alternative argument that suppression was warranted because the 2022 search warrant was overbroad. See generally *Wilson*, 315 Ga. at 614-616.

11